**Dennis J. MURRAY, et al., Respondent,**

v.

**CITY OF JENNINGS, Missouri, Appellant.**

**No. 43325.**

Missouri Court of Appeals, Eastern District, Division One.

Aug. 10, 1982.

Motion for Rehearing and/or Transfer Denied Sept. 17, 1982.

Application to Transfer Denied Oct. 18, 1982.

Lloyd E. Baker, Clayton, for appellant.

John H. Goffstein, Clayton, for respondent.

STEPHAN, Judge.

Class action suit by firefighters seeking to avoid the effect of a city residency requirement. The trial court ruled for the firefighters. The city appeals; we reverse and remand.

The named plaintiffs are certain individual firefighters of the City of Jennings, Missouri. The class consists of all employees of the Jennings Fire Department who belong to Local 2665 of the International Association of Fire Fighters. The ordinance in question is Section 2–68 of the City of Jennings Code which became effective in 1976 and reads as follows:

[A]ll employees must be residents of the City of Jennings; provided, however, that any new employee who resides outside the City of Jennings at the time of any appointment hereafter shall have sixty (60) days from the time of appointment to become a resident of the City of Jennings; further provided that employees of the City of Jennings who live outside the City of Jennings as of September 26, 1977, shall not be discharged because of said residency, but if such an employee moves from that residence after the effective date of this section, he shall automatically be discharged unless said employee becomes a resident of the City of

Jennings; and also, an employee who resides within the City of Jennings at the time of the effective date of this Section [September 26, 1977] shall automatically be discharged upon moving from the City of Jennings. Jennings, Mo., Code § 2.68 [1]

In 1964, an ordinance was enacted in the City of Jennings, which provided that "[e]xcept for refusal to obey orders, no fireman shall be dismissed from service unless for good cause for the benefit of the service, and any dismissal shall be made by order of the chief of the fire department subject to the approval of the board of fire commissioners." Jennings, Mo., Code § 13–38.

In October of 1972 a "Memorandum of Agreement" between the City of Jennings and Local 398 of the International Association of Firefighters, was enacted as an ordinance by the City. Jennings, Mo., Ordinance 1005 (Oct. 24, 1972). Section 105.510, RSMo 1969, provides that certain public employees "shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing." Section 105.520, RSMo 1969 provides that:

Whenever such proposals are presented by the exclusive bargaining representative to a public body, the public body or its designated representative or representatives shall meet, confer and discuss such proposals ... with the labor organization which is the exclusive bargaining representative of its employees ....
*Upon the completion of the discussions, the result shall be reduced to writing and be presented to the appropriate ... governing body in the form of an ordinance ... for adoption, modification or rejection.* (Emphasis added)

In adopting the Agreement as an ordinance, the City of Jennings was acting pursuant to these statutory sections. Article IV of the 1972 Agreement is entitled "Pre-

vailing Rights" and states that, "all rights, privileges and working conditions enjoyed by members of the Union at the present time, which are not included in this Agreement, shall remain in full force and effect, unless changed by mutual consent."

The record contains uncontradicted evidence to support plaintiffs' assertions that prior to the 1976 residency ordinance, firefighters could live or move wherever they desired without affecting their employment with the City of Jennings. Jennings is a city of the third class, and a statute governing cities of the third class requires that "[a]ll officers elected or appointed to offices under the city government ... must be residents of the city," but provides an exception for "appointed police officers, and other employees having only ministerial duties ...." § 77.380, RSMo 1969.

The 1972 Agreement between Local 398 and the City of Jennings contained the following Article (Article X) governing the duration of the Agreement:

This agreement ... shall remain in effect until at least March 31, 1973; and this Agreement shall be in effect for each successive fiscal year thereafter unless either party shall, within thirty (30) days after new [sic] elected Councilmen take office, give written notice to the other party of its desire to modify or terminate.

Apparently, the 1972 Agreement was "in effect for each successive fiscal year thereafter" until 1977. On May 2, 1977, Local 398 gave the Mayor and Council of the City of Jennings notice of the union's desire to modify the 1972 Agreement. On November 14, 1977 the City enacted an ordinance (No. 1209) establishing a new agreement with Local 398. The 1977 Agreement contained 27 articles as compared to 12 in the 1972 Agreement. Most of the twelve articles in the 1972 Agreement were repeated in the 1977 Agreement, including the "prevailing rights" article that is the subject of this litigation. The article in the 1977 Agreement treating the duration of the Agreement reads as follows:

---

1. The ordinance was amended twice, once in 1977 and once in 1978; the amendments are not crucial to the analysis and outcome here, where the issue is whether *any* such residency requirement is enforceable against the firefighters.

*ARTICLE IX. Duration of this Agreement:* This Agreement shall be retroactive to April 1, 1977 when approved by both parties and shall remain in effect until April 1, 1978; and it shall be in effect for each successive fiscal year thereafter unless either party shall, within thirty (30) days after newly elected Councilmen take office, give written notice to the other party of its desire to modify. However, this contract shall remain in effect until a new contract is agreed upon and the new contract shall be retroactive to the commencement of that fiscal year. Wages may be discussed and settled upon each year without re-negotiating the entire contract.

In the early part of 1978 the International Association of Firefighters received a request from Local 398 for a "moratorium" on payment to the International of dues collected by the Local from its membership. The International turned down this request. At this time the officers of the Local were delinquent in payment of the "per capita" dues collected. By August of 1978, the Local was in arrears $9,000 and the International turned down another request for a moratorium on payment of dues. The International then suspended the officers and charter of Local 398. The membership of Local 398 was not suspended. The membership of the Local applied for a new charter, and received a charter as Local 2665, in October of 1978. Between the suspension of the charter of Local 398 and the issuance of a charter to Local 2665, payroll deductions for union dues continued as usual for Jennings firefighters, with the proceeds going into an escrow account. The escrow monies were turned over to Local 2665 when it received its charter.

In November or December of 1978, Dennis Murray, one of the named plaintiffs in this cause, acting as President of Local 2665 discussed with the Mayor of Jennings the agreement then in force between the union and the City. Murray was apparently worried that the agreement "wouldn't hold" because the Jennings firefighters were no longer members of Local 398. The 1977 Agreement was given to the City Clerk who retyped the document, substituting the number 2665 for 398. The retyped document was signed by Murray, by a union shop steward, and by the Mayor of Jennings; the City Clerk attested and affixed the City seal. No date appears on the document. The City Council did not consider the document for approval, and no ordinance was passed embodying the document's contents.

Plaintiffs allege in their petition that they "desire to move, or consider to move, to locations not necessarily in the City of Jennings, Missouri." One of the named plaintiffs testified at trial that he had a desire to move, that he and his wife had "discussed" moving "on many occasions," and that they "would like to move naturally where we choose and not where someone else tells us to."

Plaintiffs challenged the City's residency requirement for two reasons. In Count I, plaintiffs in effect alleged that, since RSMo § 77.380 (1978) exempts ministerial employees from the residency requirements established by the legislature for third class cities, a third class city itself has no right to impose residency requirements on firefighters who only perform ministerial duties. In Count II, plaintiffs alleged that enforcement of the residency requirement against them would violate the "prevailing rights" clause of their agreement with the City which entitled them to live where they pleased. Plaintiffs also pointed in Count II to Section 13–38 of the Jennings Code, and alleged that the residency requirement violates this section. The trial court entered judgment for plaintiffs and stated that:

> The Court declares that the Memorandum of Agreement and the article concerning prevailing rights is [sic] valid and enforceable; that Section 13–38 of the Code of Defendant [dismissal of firemen only for good cause for benefit of service] affords Plaintiffs a prevailing right of continued employment and that Section 2–68 of the Code of Defendant [residency requirement] is unenforceable against employees of the Fire Department of the City of Jennings.

No findings of fact and conclusions of law were requested and none was entered.

The first question on appeal is what agreement, if any, was in effect between the City and the Jennings firefighters at the time the trial court ruled on this matter. The City of Jennings urges that no agreement was in effect, since Local 398 was defunct and the agreement signed by Local 2665 late in 1978 was not dated and not approved by the Jennings City Council. We disagree.

A review of the record in this case compels the conclusion that from 1972 until the time this matter was heard below, there were two agreements in force between the City of Jennings and its firefighters. The first agreement was enacted by ordinance in October of 1972 and, by virtue of Article X thereof, set out supra, continued in effect automatically until 1977. That agreement was referred to by witnesses at the hearing below as the "original agreement." Another agreement, referred to by witnesses as "the second agreement", was enacted as an ordinance on November 14, 1977. Article IX of the 1977 agreement made that agreement retroactive to April 1, 1977. Article IX also provided that the agreement was to remain in effect until April 1, 1978, and that it would remain in effect "for each successive fiscal year thereafter unless either party shall, within thirty (30) days after newly elected Councilmen take office, give written notice to the other party of its desire to modify."

■ We now address the effect of the execution by the Mayor and Local 2665, late in 1978, of a new document, identical to the 1977 Agreement except for the replacement of "Local 398" with "Local 2665." We hold that the 1978 replacement document did not constitute a new, third agreement between Jennings and its firefighters. The 1977 agreement remained in force because no ordinance was passed to supplant it, as required by RSMo § 105.520 (1978), and neither party gave written notice of its desire to terminate or modify it as required under Article IX. In any event, there is no evidence that either party intended to termi-

nate or modify the 1977 Agreement under Article IX. Rather, the record compels the conclusion that the parties, by executing the new document, intended only to alter the denomination of one of the parties, not to modify the agreement itself.

■ The 1977 Agreement was not extinguished by the suspension of the charter of Local 398. The firefighters themselves were not suspended from the International. The membership of Local 398, whose officers had been suspended, applied for and received a new charter. No dissident group of employees existed promoting a competing bargaining representative. Local 2665 was a new bargaining representative, but not a substantially different organization. See *Carpinteria Lemon Association v. National Labor Relations Board*, 240 F.2d 554, 557 (9th Cir. 1957). The identity of the representative group, which was composed entirely of Jennings firefighters, was not changed in this case by the issuance of a new charter and a different number. See *National Labor Relations Board v. Hershey Chocolate Corporation*, 297 F.2d 286, 291–292 (3rd Cir. 1961); *Graphic Arts International Union, AFL–CIO v. Graphic Arts International Union, Local 529*, 529 F.Supp. 587, 592 (W.D.Mo.1982).

■ The record discloses no attempt to modify or terminate the 1977 agreement during 1978 or 1979. Accordingly, relying on Article IX, it appears that this agreement remained in force until at least April 1, 1980. We have before us plaintiffs' motion to supplement the record on appeal. Plaintiffs wish the record to include an agreement which, according to plaintiffs' motion, was entered into after trial below and was subsequently enacted into ordinance by the Jennings City Council during the summer of 1980. Since this agreement did not exist at the time the trial court ruled on the case, we hereby deny plaintiffs' motion to supplement the record.

Defendant appears to argue, in the first point on appeal, that no valid agreement existed between the City of Jennings and

its firefighters at the time of trial. If this were so, it would not matter that the firefighters had a "prevailing right" to live where they chose, for they would have no contract safeguarding that right against the 1976 ordinance. We rule this point against defendant because there was a valid agreement at the time of trial guaranteeing plaintiffs' "prevailing rights." The "prevailing rights" were covered in the 1978 replacement document, the 1977 agreement, and the 1980 agreement (retroactive to April 1, 1980) with which plaintiffs wish to supplement the record. One of the latter two was in force; having decided that, we then need only determine whether plaintiffs in 1980 had a "prevailing right" to live where they pleased.

■ We rule that plaintiffs no longer had a "prevailing right" to live where they pleased as of the supplanting of the 1972 Agreement by the 1977 Agreement.

When the City approved the 1972 Agreement, it contracted away its right to require firefighters to reside in or move to Jennings, since the firefighters were free in this regard before the 1972 Agreement and the subject was not included in the agreement. This result is mandated by Article IV, "Prevailing Rights," of the 1972 Agreement. The City contracted away its power to enforce any residency requirement against the firefighters, however, only for the duration of the 1972 Agreement. When the 1977 Agreement was executed, the right to live where they chose was not one of the "rights, privileges and working conditions enjoyed by members of the Union at the present time," within the language of Article IV, because "at the present time" the 1972 Agreement was no longer in force and a valid residency ordinance covering all city employees existed as of January 12, 1976. This is so, whether "at the present time" is taken to mean November 15, 1977, when the 1977 Agreement was enacted as an ordinance, or April 1, 1977, the date to which the 1977 Agreement was made retroactive.

■ Those entering into a contract are conclusively presumed to be aware of existing ordinances and such provisions become an integral part of the contract. *Lazare v. Hoffman,* 444 S.W.2d 446, 450 (Mo.1969); *Hoff v. Sander,* 497 S.W.2d 651, 652–653 (Mo.App.1973); *Sachs Steel & Supply Company v. St. Louis Auto Parts & Salvage Company,* 322 S.W.2d 183, 186 (Mo.App. 1959). The provisions of existing ordinances will become part of the contract by implication as though expressly inserted therein, except where a contrary intention has been manifested. *Steele v. Latimer,* 214 Kan. 329, 521 P.2d 304, 310 (1974). When the parties entered into a new contract in 1977, the residency requirement had already come into being, and the firefighters had no prevailing right to live where they wished. The "prevailing rights clause" of the 1977 Agreement is insufficient to manifest any intention by the parties that the residency requirement would not apply to the firefighters, whose residential proximity to their duty stations is a matter of legitimate municipal concern. The application of such an ordinance must be specifically abrogated by the body enacting it.

Accordingly, we hold that the firefighters were not shielded from the Jennings residency requirement at the time this matter was heard below. Reversed and remanded for the trial court to enter judgment in a manner consistent with this opinion.

STEWART, P. J., and LACKLAND H. BLOOM, Special Judge, concur.