498 A.2d 1305

**TOWNSHIP OF MOON, Appellant/Cross-Appellee,**

**v.**

**POLICE OFFICERS OF the TOWNSHIP OF MOON, Appellee/Cross-Appellant,**

Supreme Court of Pennsylvania.

Argued March 8, 1985.

Decided Sept. 24, 1985.

496

Richard V. Sica, Joseph Mack, III, Kurt A. Miller, Thorp, Reed & Armstrong, Robert E. Durrant, David F. Luvara, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, for appellant/cross-appellee.

Kenneth M. Jarin, Sprecher, Felix, Visco, Hutchison & Young, Philadelphia, for amicus curiae—Pennsylvania League of Cities.

Dina G. McIntyre, McIntyre & McIntyre, Pittsburgh, Anthony C. Busillo, II, Mancke, Lightman & Wagner, Harrisburg, for appellee/cross-appellant.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This appeal [1] challenges the validity of an interest arbitration panel's Award settling collective bargaining disputes between Moon Township and the police officers of Moon Township. At issue is whether an interest arbitration panel may include a provision for binding grievance arbitration in an award. The Township challenges the authority of the interest arbitration panel under the Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. § 217.1 et seq. ("Act 111") to include in its award a procedure for binding grievance arbitration. Subsumed in this issue is the question as to whether Act 111 requires that a grievance arbitration procedure conform with the arbitration procedure set forth in section 4 of that Act. Finally, we are called upon to determine whether a residency requirement can be provided for under the Act 111 interest arbitration.

### I.

In 1981 the Police Officers of the Township of Moon [hereinafter referred to as "appellees"] and the Township of Moon [hereinafter referred to as "appellant"] began negoti-

1. This Court is vested with jurisdiction pursuant to 42 Pa.C.S. § 724.

ations for a collective bargaining agreement which was to be effective January 1, 1982. An impasse was subsequently reached and the parties proceeded to arbitration pursuant to Act 111 to resolve the disputed contract issues. An interest arbitration panel issued an award on March 4, 1982, which provided for, *inter alia*, a contractual grievance procedure culminating in binding arbitration [2] and a residency requirement which replaced a previous provision that required police officers to reside within the boundaries of the Township.[3]

The appellant sought relief in the Court of Common Pleas of Allegheny County seeking to vacate paragraphs # 2 and

**2.** Provision # 2 of the award contained the grievance provision which provided:

*Grievance Procedure.* Replace the present grievance procedure with the following:

"A 'grievance' shall mean any dispute as to the meaning, interpretation or application of the terms of this Agreement.

"The proper parties to any grievance shall be the Township and the Collective Bargaining representative.

"All grievances shall be reduced to writing within ten (10) days of the time that the grievant knew, or reasonably should have known, of the issue and shall be submitted to the other party.

"If the parties are unable to settle the grievance within twenty (20) calendar days from submission, the issue may be submitted to arbitration in accordance with the rules and regulations, then prevailing, of the American Arbitration Association except as may be limited or expanded by the Uniform Arbitration Act of the Commonwealth.

"Any arbitration award hereunder shall, to the extent permitted by law, be final, binding, and not subject to review except as provided for in the said Uniform Arbitration Act.

"Any arbitration award which by law cannot be final and binding shall be deemed advisory subject to good faith consideration by the parties.

"The arbitrator shall have no power to alter, amend, add to or subtract from any of the provisions of this Agreement.

"The cost of the arbitrator shall be divided equally between the parties or in such proportion as the arbitrator may direct.

"Nothing contained herein shall be deemed to impair or effect [sic] any rights that any Employee hereunder may have under the Police Tenure Act of the Commonwealth."

**3.** The other contested provision is contained in paragraph # 13 of the Award. That paragraph provided:

"*Residency.* The Township will permit its Police to reside up to five (5) miles outside the Township line."

# 13 of the Award. The Common Pleas Court found that the panel was empowered to establish a binding arbitration grievance procedure and a residency requirement. That court, however, determined that a remand was necessary since the grievance arbitration procedure set forth in the Award did not conform to the procedure described in Act 111. The appellants appealed that determination to the Commonwealth Court. The Commonwealth Court, 83 Pa. Cmwlth. 14, 477 A.2d 29, affirmed the lower court's determination on all issues except to the extent that, instead of remand, the Commonwealth Court modified the grievance arbitration by requiring it to conform to the procedures set forth under Act 111. Thereafter, appellant appealed to this Court pursuant to 42 Pa.C.S. § 724. A counter appeal was filed by appellees challenging the Commonwealth Court amendment to paragraph # 3 of the Award. Review was granted and the issue is presently ripe for disposition.

## II.

■ Our scope of review under Act 111 has been narrowly defined. In the *Washington Arbitration Case*, 436 Pa. 168, 259 A.2d 437 (1969), we stated that although section 217.7(a) of Act 111 expressly prohibits appeals to courts, there was a limited right of review in the nature of narrow certiorari where there were questions of either jurisdiction, the regularity of the proceedings before the agency, excess in exercise of powers, or constitutional violations.[4] Here, as in the *Washington Arbitration Case, supra,* we are presented with a question of the excess in the exercise of powers.

## A.

Appellant begins by asserting that the arbitration panel was without constitutional and statutory authority to im-

4. The Court relied upon Rule 68½ which dealt with the nature of review when appeals were expressly prohibited by statute. *Washington Arbitration Case,* 436 Pa. 168, 173–74, 259 A.2d 437, 440–41 (1969). Although Rule 68½ has since been repealed, we will retain the stated scope of review.

pose a binding grievance arbitration procedure upon the parties. In developing this argument appellant ignores the legislative history, overlooks the significance of the sequence of the legislative responses, and disregards the clearly stated purpose the General Assembly sought to achieve in promulgating Act 111.

■ Appellant contends that Act 111 is limited to "interest" arbitration and does not permit the use of "grievance" or contract arbitration between the public employer and police and fire personnel in the resolution of disputes that may arise under the terms of an existing collective bargaining agreement. This contention is premised upon the fact that Act 111 expressly provides for interest arbitration. *See* 43 P.S. § 217.4. Act 111 does not contain an express provision authorizing the arbitration procedure set forth in section 4, 43 P.S. § 217.4, to be used to resolve grievances that might arise under a collective bargaining agreement. Thus appellant states that this absence of an express authorization represents a legislative intent not to provide binding arbitration as a means for resolution of disputes as to the interpretations of the terms of the contract. In support of this position appellant notes the fact the Public Employe Relation Act, Act of July 23, 1970, P.L. 563, § 101, 43 P.S. § 1101.101 *et seq.* (hereinafter "Act 195"), specifically provides for grievance arbitration as indicative of a legislative awareness of the distinction between the two types of arbitration procedures and as further evidence of a deliberate legislative judgment to deny grievance arbitration between public employers and police and fire personnel.[5]

5. "Grievance" or "contract interpretation" arbitration involves the resolution by a third party of a dispute between public employer and public employee over the proper interpretation of an existing collective bargaining agreement. "Interest" arbitration involves the resolution of an impasse in collective bargaining over the terms of a new contract. Thrush, *A Survey of Public Sector Collective Bargaining Law in Pennsylvania,* 83 Dick.L.Rev. 755, 783–84 (1979); Elkouri & Eklouri, *How Arbitration Works* 47 (3d ed. 1973). Both interest and grievance arbitration share a common vehicle as a means to dispute resolution. It must be remembered that both are merely procedures for providing resolution by binding arbitration. The distinction arises

Because of the increasing concern over disruptive work stoppages in the public sector, the General Assembly enacted the Act of June 30, 1947, P.L. 1183, § 1 *et seq.*, which prohibited strikes and attempted to provide for the adjustment of grievances through negotiations. However there was no provision made for collective bargaining as to terms and conditions of employment for public employees. Experience proved that the Act of 1947 was not effective in establishing harmony in the public employment sector.[6] By the late 1960's it was accepted that the right of collective bargaining as to terms and conditions of employment should be given to the public employee.

from the subject matter of the arbitration, not the manner in which it is to be resolved.

Although it has been stated that interest arbitration constitutes a "quasi-legislative" function whereas grievance arbitration contemplates interpretation of the disputed terms of an existing contract and is thus more akin to a "judicial" process, Note, *The Use of Tripartite Boards in Labor, Commercial and International Arbitration*, 68 Harv.L. Rev. 293 (1954), analysis indicates that this attempted distinction is simplistic and less helpful than it may initially appear. Certainly the designing of solutions to resolve grievances and disputes frequently transcends the role of pure interpretation of the initial intent of the parties to the agreement.

**6.** The failure to provide for collective bargaining resulted in illegal strikes and a breakdown of communication between the public employer and their employees. On May 14, 1968, Governor Raymond P. Shafer created, by Executive Order, the Governor's Commission for Revision of Pennsylvania Public Employe Law of Pennsylvania [the "Hickman Commission"]. The Hickman Commission was created to review the whole area of the relations of public employers and public employees and to make recommendations to the Governor (by June 20, 1968) for the establishment of orderly, fair and workable procedures governing those relations, including legislation. In its report the Commission noted that the "inability to bargain collectively has created more ill will and led to more friction and strikes than any other single cause" and recommended that the 1947 Act "be replaced by an entirely new law governing relationships between public employers and employees." Four days after the Hickman Commission Report was published the General Assembly passed Act 111 of 1968 to cure the defects of the 1947 Act as it relates to police and fire personnel. *See also Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 502–03, 337 A.2d 262, 266–67 (1975); Note, *Recommendations of the Governor's Commission to Revise the Public Employment Law of Pennsylvania: A Preliminary Assessment*, 38 U.Pitt.L.Rev. 161 (1968–69).

In response, the legislature in 1968 passed Act 111 which conferred upon police and fire personnel the right of collective bargaining. The right to strike was withheld because of the crucial services being performed by these employees. *See generally,* Thrush, *A Survey of Public Sector Collective Bargaining Law in Pennsylvania,* 83 Dick.L.Rev. 755 (1979); Note, *Recommendations of the Governor's Commission to Revise the Public Employment Law of Pennsylvania: A Preliminary Assessment,* 30 U.Pitt.L.Rev. 161 (1968–69). However, statute established binding arbitration by three arbitrators to resolve an impasse in negotiations. Two years later in 1970 the right to bargain collectively was given to the remaining public employees under Act 195. Since the services of these employees were not as critical to the public safety and welfare they were afforded a voluntary arbitration procedure where an impasse in negotiation was reached, 43 P.S. § 1101.804, and the right to strike was recognized after the exhaustion of negotiation and mediation procedures provided for under the Act, 43 P.S. § 1101.1003.[7]

From the foregoing it is apparent that the General Assembly was committed to the view that the right to collective bargaining over terms and conditions of employment was critical to the restoration and maintenance of harmony in the public employment sector. *See* Note, *Recommendations of the Governor's Commission to Revise the Public Employment Law of Pennsylvania: A Preliminary Assessment, supra* at 169–70. The sequence of the legislative responses evidences the priority afforded by the legislature to the employment of police and fire personnel. Act 111

---

**7.** The provisions for voluntary arbitration and the right to strike were made specifically inapplicable to guards at prisons and mental hospitals and to court personnel. These employees, whose positions are more critical to the public safety and welfare, are prohibited from striking at any time. 43 P.S. § 1101.1001. Stalemated collective bargaining disputes involving these employees must be submitted to binding arbitration before a panel of arbitrators. 43 P.S. § 1101.805. Unlike awards by Act 111 arbitration panels, which constitute a mandate to the legislature to take whatever action necessary to make them effective, the decisions of arbitrators under section 805 of Act 195 are considered only advisory. 43 P.S. § 1101.805.

unequivocally states that it was intended to provide "the right to an adjustment or settlement of their [police and fire personnel] grievances or disputes in accordance with the terms of this Act" [8] 43 P.S. § 217.1.

■ With this clear demonstration of the legislative priority in seeking to restore harmony in the employment relationship with police and fire personnel, it is difficult to accept appellant's underlying premise that the legislature intended to exclude grievance arbitration as a method for the resolution of disputes as to meaning, interpretation and implication of the terms of the collective bargaining agreement. When we are seeking to construe the legislative intent we are instructed to look to the occasion and necessity for the enactment, the circumstances under which it was enacted, the mischief to be remedied and the object to be obtained. 1 Pa.C.S. § 1921(c); *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975); *Commonwealth v. Emerick*, 373 Pa. 388, 96 A.2d 370 (1953); *In re Martin's Estate*, 365 Pa. 280, 74 A.2d 120 (1950); *Phipps v. Kirk*, 333 Pa. 478, 5 A.2d 143 (1939); *Orlosky v. Haskell*, 304 Pa. 57, 155 A. 112 (1931). A consideration of any or all of these points of reference mitigates against the interpretation urged by appellant.

The 1967 Amendment to Article III, § 31 of the Pennsylvania Constitution by its express terms provided for binding arbitration "for the adjustment or settlement of grievances or disputes" for police and fire personnel.

**8.** Act 111 states:

§ 217.1. Right to Bargain

Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act. 43 P.S. § 217.1.

The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever. [Notwithstanding the foregoing limitation or any other provisions of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the *adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties* . . . ".] (Bracketed portion added by the 1967 Amendment) (Emphasis added).

Thus the constitutional predicate for Act 111 expressly provides for binding resolution of grievances or disputes as well as for collective bargaining. Moreover, as previously noted section 1 of Act 111 in setting forth the intended scope of that legislation also expressly stated that police and fire personnel "shall have the right to" settlement of their grievances or disputes. The mere fact that the arbitration procedure is set forth in the context of an impasse does not warrant the inference that the concept of binding arbitration was to be limited to the resolution of contract negotiation difficulties. To do so would render meaningless section 1's assurance that the resolution of grievances and disputes comprised part of the subject matter to be addressed in the Act. Further, section 1 unquestionably provides the right to an adjustment of grievances and disputes under the terms of an existing collective bargaining agreement. To conclude that the arbitration procedure was not intended to cover grievance and dispute resolutions creates a right without providing a remedy for its enforcement. 1 Pa.C.S. § 1922(1); *Lehigh Valley Co-op Farmers v. Commonwealth, Bureau of Employment Security Department of Labor and Industry,* 498 Pa. 521, 447 A.2d 948 (1982); *Schaefer v. Hilton,* 473 Pa. 237, 373 A.2d 1350

(1977); *Goodman v. Kennedy,* 459 Pa. 313, 329 A.2d 224 (1974); *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973); *Get Set Organization v. Philadelphia Federation of Teachers, Local No. 3,* 446 Pa. 174, 286 A.2d 633 (1971); *Stollar v. Continental Can Co.,* 407 Pa. 264, 180 A.2d 71 (1962).

If the view urged by appellant is accepted, the right to an adjustment of grievances or disputes must be exercised through the traditional court system. The adversarial nature of such proceedings as well as the time that would be consumed in reaching final resolution would do little to foster the harmony sought to be attained in this area. In many instances the collective bargaining agreement would expire under its terms before final judgment in the lawsuit, rendering the action moot and the right illusory.[9] As we noted in *Chirico v. Board of Supervisors for Newton Township,* 504 Pa. 71, 470 A.2d 470 (1983) (*Chirico*):

> Act 111 does not set forth the specific mechanism by which grievance, as compared with interest, disputes are to be arbitrated. We acknowledge it is clearly inadequate to recognize a right "to a settlement of grievances or disputes", while failing to provide any method for the implementation of those rights. This obvious vacuum must not be countenanced. Yet resort to the courts to meet this need would contravene the strong affirmance of the use of non-adversarial methods for the resolution of disputes between governmental employers and police and firemen embodied in section two of the Act.
>
> First, Act 111 specifically avoids the use of the courts for dispute resolution. This policy is so strong that section seven of the Act, 43 P.S. 217.7, provides for binding arbitration and contains the unique provision that "[n]o appeal therefrom shall be allowed to any court." Thus the only method for settling grievance disputes allowable within the framework of Act 111 is arbitration.

9. We note that the instant agreement was to be effective January 1, 1982. The term of the Agreement was for the calendar years 1982 and 1983.

This objective would be completely frustrated if we were to superimpose, by judicial fiat, a layer of court intervention.

*Id.*, 504 Pa. at 78–79, 470 A.2d at 474–75 (footnote omitted).

Act 111 does not expressly exclude the adjustment of grievances and disputes as a subject for binding arbitration and we will not make such an inference in view of the consequences of such an approach. The public's interest in approving the constitutional amendment and the purpose of the legislature's promulgation of Act 111 was to provide a vehicle to permit police and fire personnel, who render so vital a service to the public, to effectively resolve employment disputes with their employers as an alternative to a disruptive work stoppage. To interpret the statute in such a manner as to frustrate this objective is obviously an unacceptable result.[10]

 Our case law also makes it clear that this was a proper subject for consideration by an interest arbitration panel. It is now firmly established in this Commonwealth that interest arbitration panels are empowered to award any terms or conditions of employment to which a public employer and its police or fire employees may voluntarily agree. *See Chirico v. Board of Supervisors for Newton Township, supra; Fraternal Order of Police, E.B. Jermyn Lodge v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982); *Grottenthaler v. Pennsylvania State Police*, 488 Pa. 19, 410 A.2d 806 (1980); *Conley v. Joyce*, 482 Pa. 263, 393 A.2d 654 (1978); *Washington Arbitration Case*, 436 Pa. 168, 259 A.2d 437 (1969); *Guthrie v. Borough of Wilkinsburg*, 81 Pa.Commw. 73, 472 A.2d 285 (1984). It is also without question that the parties to a collective bargaining agreement in the public sector may voluntarily agree to resolve their disputes under that agreement by means of arbitra-

10. In addition to appellant's statutory argument appellant also argues that Article III, § 31 was also violated by the interest arbitration panel award providing for grievance arbitration. This argument however, is based upon appellant's premise that Act 111 did not authorize grievance arbitration procedures.

tion.[11] *See Chirico v. Board of Supervisors for Newton Township, supra; Fraternal Order of Police, E.B. Jermyn Lodge v. Hickey, supra; Ambridge Borough Water Authority v. Columbia,* 458 Pa. 546, 328 A.2d 498 (1974).

In *Chirico* we expressly held that under Act 111 that arbitration is the proper forum for resolution of grievance disputes involving the interpretation of a provision of an award. We have been shown no controlling precedent nor have we been offered any impressive arguments why we should establish an exception which would prevent an arbitration panel from establishing a grievance arbitration procedure as part of the contract it develops for the parties. This was a legitimate subject for bargaining and the employer could have voluntarily agreed to a provision for grievance arbitration to be included in the bargaining agreement the parties were attempting to negotiate. Moreover, in view of the prohibition against strikes under Act 111, grievance procedures of this nature which fosters harmony in the employment relationship should be favored. We therefore rely upon the above cited precedent in holding that the arbitration panel could properly include in its award a mechanism for binding arbitration of grievances and disputes arising under the terms of the collective bargaining provisions set forth under its award.

### B.

We next address the question as to whether the panel exceeded its authority in establishing a binding arbitration procedure in conformity with the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7320. This is an area where this Court has not previously provided direction. It is therefore understandable that the trial court and the Commonwealth Court,

---

11. We have frequently recognized that public employers are in many respects more constrained in what they may do, and those limitations must be maintained. *PLRB v. State College Area School District, supra,* 461 Pa. at 501–502 n. 5, 337 A.2d at 266 n. 5; *Washington Arbitration Case,* 436 Pa. 162, 259 A.2d 437, 472 (1969). However, this is not one of the areas where the constraints of public employment would interfere.

acting out of an abundance of caution, were reluctant to permit the panel to depart from the tripartite structure expressly set forth in Act 111. We will now address the latitude of the panel's discretion in setting up a procedure for binding arbitration for grievances and disputes. We note that both appellant and appellees are in agreement that an Act 111 grievance procedure need not conform in all particulars with the arbitration process set forth in section 4 of Act 111. We agree for the reasons that follow.

 Although we have found that Act 111 expresses a clear intention to provide for grievance and dispute resolution by way of binding arbitration, there is no clear intent that can be derived from the language of the Act to suggest that the procedure set forth in section 4 must be followed. In fact the procedure described in section 4 sets forth time limits that are clearly related to a contract negotiation impasse and not to an alleged grievance. Moreover, there is nothing unique about a tripartite arbitration panel that would make it more suitable for grievance arbitration than the other forms of binding arbitration that have been approved by the legislature. *See, e.g.,* 42 Pa.C.S. § 7301 *et seq.* As has been suggested by our earlier discussion a grievance resolution procedure is undisputably a legitimate term and condition of employment which is a proper subject of collective bargaining. R. Gorman, *Labor Law* 506–07 (1976); *see, e.g., Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978); *Rylke v. Portage Area School District,* 473 Pa. 481, 375 A.2d 692 (1977); *Building Service Employees International Union, Local 252 v. Schlesinger,* 440 Pa. 448, 269 A.2d 894 (1970); *Guille v. Mushroom Transportation Co.,* 425 Pa. 607, 229 A.2d 903 (1967); *United Steel Workers of America, AFL–CIO v. Westinghouse Electric Corp.,* 413 Pa. 358, 196 A.2d 857 (1964); *Newspaper Guild of Greater Philadelphia v. Philadelphia Daily News, Inc.,* 401 Pa. 337, 164 A.2d 215 (1960); *Falsetti v. Local Union No. 2026, United Mine Workers of America,* 400 Pa. 145, 161 A.2d 882 (1960); *Goldstein v. International Ladies' Garment*

*Workers' Union,* 328 Pa. 385, 196 A. 43 (1938). Unquestionably, the parties could have voluntarily agreed to a grievance procedure in accordance with the Uniform Arbitration Act, 42 Pa.C.S.A. 7301 et seq. *See* 42 Pa.C.S. § 7302(b). Therefore, we can find no reason for holding that an arbitration panel should not have the same latitude in this area. *See Chirico v. Board of Supervisors for Newton Township, supra; Fraternal Order of Police, E.B. Jermyn Lodge v. Hickey, supra; Grottenthaler v. Pennsylvania State Police, supra; Conley v. Joyce, supra; Washington Arbitration Case, surpa; Guthrie v. Borough of Wilkinsburg, supra.*

### III.

Appellant also contends that an Act 111 interest arbitration panel does not have statutory authority to modify a pre-existing residency requirement. Although our case law since the passage of Act 111 has held residency to be a proper subject of bargaining and arbitration, *Jeske v. Upper Yoder Township,* 44 Pa.Commw. 13, 403 A.2d 1010 (1979); *Cheltenham Township v. Cheltenham Police,* 8 Pa. Commw. 360, 301 A.2d 430 (1973). Appellant urges that these decisions should be reversed, at least as to the arbitrability of residency. In support of this position, appellant sets forth what it deems to be the salutary effects of the prior residency policy [12] as well as its underlying premise that residency should be considered as a managerial prerogative.

We are of the view that the Commonwealth Court's decision holding that residence as a requisite for application to or membership in a police department clearly is a condition of employment within the meaning of section 1 of Act

**12.** The township argues that the prior residency requirement placed police officers in the community even when they were off duty. They therefore reason that this physical presence within the boundaries of the community creates a psychological link to that community. In addition, they argue that the officers would be a part of the tax base from which their salary is derived and conclude that this fact heightens their appreciation of community concerns and encourages a realistic approach to contract negotiations.

111, *Cheltenham Township v. Cheltenham Police, supra,* cannot be seriously questioned. Residency requirements have traditionally been considered as a term or condition of employment and therefore an appropriate subject for collective bargaining. *Carofano v. City of Bridgeport,* 196 Conn. 623, 495 A.2d 1011 (1985); *Murray v. City of Jennings,* 639 S.W.2d 220 (Mo.App.1982); *Pontiac Police Officers Association v. City of Pontiac,* 397 Mich. 674, 246 N.W.2d 831 (1976); *Detroit Police Officers Association v. Detroit,* 391 Mich. 44, 214 N.W.2d 803 (1974); *Jeske v. Upper Yoder Township, supra; Cheltenham Township v. Cheltenham Police, supra; see generally* Annot., *Validity, Construction, and Application of Enactments Relating to Requirement of Residency Within or Near Specified Governmental Unit as Condition of Continued Employment for Policemen or Firemen,* 4 A.L.R.4th 380 (1981). Nor are we persuaded that the uniqueness of the relationship of fire and police personnel with their public employer is a relevant factor to warrant a change in this conclusion. *Upper Yoder Township, supra; Cheltenham Township, supra.* The same result would obtain under the rule set forth in *Washington Arbitration Case, supra.*

Since the residency requirement has not been preempted by, or prohibited by, an existing statute the panel possessed the authority to include paragraph # 13 within its Award. Both the Commonwealth Court and the PLRB have recognized that a residency requirement is a legitimate condition of employment and thus a mandatory subject of bargaining. *See Cheltenham Township v. Cheltenham Police Department, supra; City of Lebanon,* 14 PPER § 14020 (1982). *PLRB v. School District of the City of Erie,* 9 PPER § 9031 (1978), *aff'd,* 10 PPER § 10112 (C.C.P. Erie County 1979). We agree and note that under the standard set forth in the *Washington Arbitration Case, supra,* residency, as a legitimate condition of employment is within the scope of collective bargaining.

Accordingly, the order of the Commonwealth Court is modified insofar as its direction to replace the binding

arbitration procedure set forth in paragraph # 2 of the arbitrator's Award. In all other respects the Order of the Commonwealth Court is affirmed.

LARSEN, J., concurs in the result.