615 A.2d 893

**CITY OF CHESTER, Appellant,**

v.

**FRATERNAL ORDER OF POLICE, LODGE 19, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 22, 1991.

Decided Aug. 27, 1992.

R. Scott Kauffman, for appellant.

Thomas H. Kohn, for appellee.

Before CRAIG, President Judge, McGINLEY, and LORD, Senior Judge.

McGINLEY, Judge.

The City of Chester (City) appeals from two orders of the Court of Common Pleas of Delaware County (common pleas court). The first order dismissed the City's post-trial motion following the common pleas court's denial of the City's petition to vacate an arbitration award and granted a cross-motion of the Fraternal Order of Police, Lodge 19 (Lodge 19) to confirm the arbitration award and also award attorney's fees and court costs. The second order permanently enjoined the City from disciplining police officers for not residing within City limits. We affirm in part and reverse in part.

Lodge 19 and the City were parties to a collective bargaining agreement (CBA) that was set to expire on December 31, 1988. In January of 1988, Lodge 19 began collective bargaining negotiations by submitting proposed modifications to the then effective CBA. Among the proposed modifications submitted were provisions regarding residency [1] and death benefits.[2]

On March 9, 1988, in the absence of any response to its request to negotiate, Lodge 19 notified the City that it was declaring an impasse in the negotiations and requested the appointment of an arbitration panel pursuant to the provisions of what is commonly called the Collective Bargaining By Policemen or Firemen Act, Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.27 (Act 111). At this point, Lodge 19 designated Gary Lightman (Lightman) as its appointed arbitrator. By letter dated March 24, 1988, Lodge 19 advised the City

1. The "residency" provision provides:
 No Police Officers shall be required to reside within the City of Chester as a condition of employment and no Police Officer shall be discriminated against as a result of exercising this option.

2. The "disability and death benefits" provision provides:
 (b) Any Officer who dies or is killed in the line of duty shall have his spouse and children continue to receive the same medical benefits they enjoyed prior to the Officer's death. This benefit shall continue until the spouse remarries or expires. This benefit shall continue for the Officer's children until they reach the age of eighteen (18).

that both parties must agree to waive the time requirement in Section 4(b) of Act 111, 43 P.S. § 217.4(b), which requires the issuance of an award within thirty days of appointment of the neutral arbitrator. Lodge 19 also sought a waiver of the provision that no Act 111 arbitration hearing be held in less than thirty days after the negotiations prove futile. The City responded in a March 29, 1988, letter by stating that it had only agreed to the second provision, that no arbitration hearing would be held within thirty days from the date the negotiations proved futile, but that it did not agree to waive the Section 4(b) requirement that an award be issued within thirty days of the appointment of the neutral arbitrator. The City also advised Lodge 19 that it had selected Alvin S. Ackerman (Ackerman) as its appointed arbitrator.

The parties began lengthy negotiations on June 8, 1988, and on September 15, 1988, the City submitted proposals to the FOP. While the negotiations were being conducted, James Claire Duff (Duff) was jointly designated to serve as the impartial arbitrator. On May 13, 1988, Duff accepted the appointment subject to a waiver of the requirement in Section 4(b) of Act 111, that a hearing commence within ten days of the appointment of the third arbitrator. By letter dated May 17, 1988, the City waived the ten-day requirement and hearings were scheduled for August 30–31, 1988. At the request of the City, the arbitration hearings were postponed until September 26–27, 1988. At no time prior to the arbitration hearings did the City object to their timeliness. The hearings closed on September 27, 1988. On October 31, 1988, the arbitrators met in executive session. At the request of Ackerman, the City's arbitrator, a second executive session was held after January 1, 1989.

On January 7, 1989, the arbitration panel issued an award with Ackerman dissenting. The award included the following two provisions:

1. Police shall be free to reside where they choose to. Police who choose not to reside in Chester shall receive $400 less per year than the wages described herein.

. . . .

3. Any Officer who is killed (by an outside force) in the line of duty shall have his spouse and children continue to receive the same medical benefits as they enjoyed prior to the Officer's death. This benefit shall continue until the spouse remarries, expires, or is eligible to acquire medical coverage from another employment source. This benefit shall continue for the Officer's children until they reach the age of eighteen (18).

On February 7, 1989, the City filed in the common pleas court a petition to vacate the arbitration award alleging that the thirty-day mandatory time limit for issuing an award after appointment of the third arbitrator in Section 4(b) of Act 111 had expired, that the award's residency provision is unlawful because it is contrary to the City's policy favoring residency requirements, and that the grant of death benefits to the spouse and family of an officer killed on duty violates the provisions of the Third Class City Code (City Code).[3] In response, Lodge 19 cross-petitioned to confirm the arbitration award and to obtain an award of attorney's fees and court costs.

In the interim, on November 7, 1989, the citizens of the City passed an amendment to the City's Home Rule Charter (Charter), which added Section 903. This section provides as follows:

(a) No person shall be employed by the City of Chester who is not a legal resident (domicile) thereof at the time of employment.

(b) All persons presently employed by the City who presently live within the City or are employed after the effective date of this amendment shall as a condition of their employment maintain their legal residence (domicile) within the City of Chester or they shall be subject to dismissal.

323 Pa.Code § 11.9–903(a) and (b).

On November 20, 1989, the common pleas court entered an order denying the City's petition to vacate the award and granted Lodge 19's cross-motion to confirm and enforce the

3. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701.

award. However, the common pleas court did not address Lodge 19's request for attorney's fees. In its decision, the common pleas court concluded that the City waived the mandatory time limits of Act 111, that the granting of survivor benefits to family members of a deceased officer is a lawful form of deferred compensation, and that the Act 111 award regarding residency is lawful because it does not preempt any existing statutory residency requirement. However, at this time, the common pleas court did not rule on the effect of Section 903 of the Charter which was enacted after the arbitration award.

On November 28, 1989, several police officers notified the City that they had moved outside of the City limits. The City, pursuant to Section 903 of the Charter, attempted to enforce the residency requirement against these officers. Hearings on the officers' violations were scheduled for December 6–7, 1989, at which time none of the officers appeared. As a result, the officers were suspended.

On December 6, 1989, Lodge 19 filed a petition seeking a temporary restraining order and subsequent injunction against the City's enforcement of Section 903 of the Charter, alleging that the enforcement of the residency requirement violated the common pleas court's order confirming the arbitration award. On February 6, 1990, the common pleas court denied the City's motion for post-trial relief and granted Lodge 19's post-trial motion for attorney's fees. On December 20, 1990, the common pleas court entered a permanent injunction enjoining the City from enforcing Section 903 of the Charter. Final judgment was entered on both orders on January 10, 1991. In a March 12, 1991, opinion in support of its injunction, in which the common pleas court incorporated its November 16, 1989, opinion regarding the City's petition to vacate, the common pleas court determined that the amended residency requirement in Section 903 of the Charter was unenforceable.

The City appeals from the common pleas court's order that denied its motion for post-trial relief and that granted Lodge 19's request for attorney's fees. The City also appeals the

common pleas court's grant of the preliminary injunction. The City contends that the common pleas court erred in enjoining the City from enforcing Section 903 of the Charter, that the common pleas court erred in entering a permanent injunction without making an adjudication as required by Pa.R.C.P. No. 1517, that in light of Section 902 of the Charter the common pleas court erred by concluding that the arbitration award lawfully required the City to provide survivor benefits to non-dependent family members of deceased police officers, and that the common pleas court erred in awarding Lodge 19 attorney's fees.

Our scope of review over an Act 111 arbitration award is in the nature of narrow certiorari, and we may only inquire whether the arbitrators had jurisdiction or whether they exceeded their authority, and, in addition, we may review any constitutional questions. *Wilkes–Barre v. Wilkes–Barre Firefighters Association, Local 104,* 142 Pa.Commonwealth Ct. 168, 596 A.2d 1271 (1991).

The City's first contention is that the common pleas court's entry of an injunction against enforcement of Section 903 of the Charter infringes on the citizens' constitutional right to limit the powers of their municipal government. Specifically, the City contends that Article 9, Section 2 of the Pennsylvania Constitution grants electors a fundamental substantive right to establish home rule and to establish limits on the authority of their municipal representatives and to define the limits of their elected officials' authority. As a result, the City contends that the residency requirement in Section 903 of the Charter, even though adopted after the arbitration award, is enforceable.

In response, Lodge 19 contends that residency is a "term" or "condition" of employment upon which Act 111 arbitrators are empowered to rule and that the common pleas court properly upheld the award. Under Section 302(b)(v) of the Home Rule Charter and Optional Plans Law (Home Rule Act),[4] no municipality shall enact any provision inconsistent

4. Act of April 13, 1972, P.L. 184, *as amended,* 53 P.S. §§ 1–302(b)(v).

with any statute affecting the rights, benefits or working conditions of any employee of a political subdivision of the Commonwealth. In our state Supreme Court's landmark decision, the *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969), the Court noted that an Act 111 arbitration award that deals with proper terms and conditions of employment serves as a mandate to the legislative branch of the public employer. *Id.* at 177, 259 A.2d at 442.

 In *Township of Moon v. Police Officers of the Township of Moon,* 508 Pa. 495, 498 A.2d 1305 (1985), the Supreme Court addressed a similar contention by Moon Township that an Act 111 interest arbitration panel does not have statutory authority to modify a pre-existing residency requirement. In *Moon Township* the Court upheld our determination that residence as a requisite for application to or membership in a police department clearly is a "condition" of employment within the meaning of Section 1 of Act 111, 43 P.S. 217.1. In *Moon Township,* the Court noted:

> Residency requirements have traditionally been considered as a term or condition of employment and therefore an appropriate subject for collective bargaining. *Carofano v. City of Bridgeport,* 196 Conn. 623, 495 A.2d 1011 (1985); *Murray v. City of Jennings,* 639 S.W.2d 220 (Mo.App.1982); *Pontiac Police Officers Association v. City of Pontiac,* 397 Mich. 674, 246 N.W.2d 831 (1976); *Detroit Police Officers Association v. Detroit,* 391 Mich. 44, 214 N.W.2d 803 (1974); *Jeske v. Upper Yoder Township,* [44 Pa.Commonwealth Ct. 13, 403 A.2d 1010 (1979) ]; *Cheltenham Township v. Cheltenham Police* [8 Pa.Commonwealth Ct. 360, 301 A.2d 430 (1973) ]; see generally Annot., Validity, Construction and Application of Enactments Relating to Requirement of Residency Within or Near Specified Governmental Unit as Condition of Continued Employment for Police or Firemen, 4 A.L.R.4th 380 (1981). Nor are we persuaded that the uniqueness of the relationship of fire and police personnel with their public employer is a relevant factor to warrant a change in this conclusion. Upper Yoder Township, supra; Cheltenham Township, supra. The same result would ob-

tain under the rules set forth in *Washington Arbitration Case,* supra.

Since the residency requirement has not been preempted by or prohibited by, an existing statute the panel possessed the authority to include paragraph 13 within its Award. Both the Commonwealth Court and the PLRB have recognized that a residency requirement is a legitimate condition of employment and thus a mandatory subject of bargaining. See *Cheltenham Township v. Cheltenham Police Department,* supra; City of Lebanon, 14 PPER § 14020 (1982). PLRB v. School District of the City of Erie, 9 PPER § 9031 (1978), aff'd, 10 PPER § 10112 (C.C.P. Erie County 1979). We agree and note that under standards set forth in the *Washington Arbitration Case,* supra, residency, as a legitimate condition of employment is within the scope of collective bargaining.

*Id.,* 508 Pa. at 510–11, 498 A.2d at 1313. In the present case, the residency requirement was not established by any pre-existing statute and *Moon Township* controls.

Although the City argues that Section 902 of the City's 1981 Charter establishes a residency requirement, we do not agree. Section 902 provides:

The Council shall make every effort to appoint qualified citizens of the city to boards, commissions, authorities, or other agencies of the city government in order that the greatest possible use be made of the talents and interests of city citizens in promoting public interest and welfare of the City of Chester.

323 Pa.Code § 11.9–902. Clearly, nothing in the language of Section 902 of the Charter *prohibits* non-residents from working in the City. Accordingly, we conclude that Section 902 does not preempt the January 7, 1989, arbitration award.

The City's second contention is that the common pleas court's entry of a permanent injunction is invalid because the court did not make an adjudication as required by Pa.R.C.P. No. 1517, which provides:

(a) The court shall make an adjudication and may do so before the testimony has been transcribed. The adjudica-

tion shall consist of (1) a statement of the issues; (2) a closely condensed chronological statement, in narrative form or in separate findings, of all the facts which are necessary to be known in order to determine the issues; (3) a discussion of the questions of law involved and the court's conclusions of law and (4) a decree nisi.

(b) The adjudication may be made orally in open court at the end of the trial, and in that event shall be forthwith transcribed and filed in the office of the prothonotary, or it may be made thereafter in writing and filed forthwith. In either event the prothonotary shall notify all parties or their attorneys of the date of filing.

■ The City contends that the common pleas court failed to comply with Pa.R.C.P. No. 1517 by failing to make any findings of fact, to identify any legal issues, or state its legal conclusions. However, in its March 12, 1991, opinion regarding the issuance of the injunction prohibiting the enforcement of Section 903 of the Charter, the common pleas court incorporated its findings of fact, statement of the issues and conclusions of law set forth in its November 16, 1989, opinion regarding the City's petition to vacate. *See* Certified Record (C.R.), Opinion of the Common Pleas Court, March 12, 1991 at 1. In *Trinity Lutheran Evangelical Church v. May,* 112 Pa.Commonwealth Ct. 557, 537 A.2d 38 (1988), we noted that a final injunction may be based solely on the record of a preliminary injunction. *Id.* at 562 n. 5, 537 A.2d at 41 n. 5. The common pleas court's injunction is clearly based on its November 16, 1989, opinion dismissing the petition to vacate and confirming the arbitration award. The November 16, 1989, opinion contains detailed findings of fact and addresses the residency issue. *See* C.R., Opinion of the Common Pleas Court, November 16, 1989 at 1–7. Hence, we conclude that the common pleas court complied with Pa.R.C.P. No. 1517.

The City's third contention is that the arbitration panel exceeded its authority by granting medical benefits to the spouse and children of any officer killed in the line of duty. The City now relies on Section 302(b)(v) of the Home Rule Act (a home rule municipality may not enact any provision incon-

sistent with any statute enacted by the General Assembly affecting the rights, privileges or working conditions of an employee of a political subdivision) and cites Section 902 of the City Code,[5] which provides in pertinent part:

Council shall prescribe, by ordinance, the number, duties, and compensation of the officers and employes of the city. No payment of such compensation shall be made from the city treasury, or be in any way authorized, to any person except an officer or employe elected or appointed in pursuance of law. No ordinance shall be passed giving any extra compensation to any officer, servant, employe or contractor, without previous authority of law.

■ The City contends that granting medical benefits to the spouse and children of officers killed in the line of duty violates Section 902 of the City Code by paying compensation to non-employees of the City. However, Section 2403 of the City Code provides in part that the city council shall have the power:

To make contracts of insurance with any insurance company, or nonprofit hospitalization corporation, or nonprofit medical service corporation authorized to transact insurance business within the Commonwealth, *insuring its elected or appointed officers, officials and employees, or any other class or classes thereof, or their dependents,* under a policy or policies of group insurance covering life, health, hospitalization, medical service, or accident insurance, . . . and, for such purposes, to agree to pay part or all of the premiums or charges. . . . (Emphasis added.)

53 P.S. § 37403.53. In *Appeal of Upper Providence Police, Delaware County Lodge No. 27, Fraternal Order of Police,* 514 Pa. 501, 526 A.2d 315 (1987), our Supreme Court reiterated the rule established in *Washington Arbitration Case,* that an arbitration award may only require a public employer to do that which it could do voluntarily. *Upper Providence,* 514 Pa. at 514, 526 A.2d at 321. Although the present case concerns the interpretation of an arbitration award rather than the terms of a CBA as was the case in *Upper Providence,* it is

5. 53 P.S. § 35902.

clear that the terms and conditions of the arbitration award are terms and conditions with which the City may have voluntarily agreed. Pursuant to Section 2403 of the City Code, the City has the specific authority to purchase life, health, hospitalization, medical service, or accident insurance, and to pay the premiums, for its employees and their dependents. Accordingly, we conclude that the City is not prohibited from providing survivor's benefits to dependents of police officers killed in the line of duty.

A similar argument was presented to this Court in *Wilkes-Barre v. Wilkes-Barre Firefighters Local 104*, 142 Pa.Commonwealth Ct. 168, 596 A.2d 1271 (1991). In *Wilkes-Barre* we held that retirement benefits are a form of deferred compensation, and such benefits do not violate any statutory prohibition against payments to non-employees. We recognize that the arbitration award in *Wilkes-Barre* required the retiree's spouse to pay the prevailing cost for continued medical coverage. *Id.* at 170, 596 A.2d at 1272. In *Township of Tinicum v. Fife*, 95 Pa.Commonwealth Ct. 516, 505 A.2d 1116 (1986), *petition for allowance of appeal denied*, 518 Pa. 656, 544 A.2d 1343 (1988), we held that medical insurance benefits for retirees are a form of deferred compensation to employees which did not violate a constitutional prohibition against paying compensation to employees for services rendered in the past.[6]

---

**6.** In *Tinicum*, this Court referred to an opinion of the Attorney General regarding payment of medical benefits to dependents of deceased state police officers:

The Attorney General in addressing the question of whether awarding medical benefits to the dependent of a deceased state police officer violated the Pennsylvania Constitution Article III, Section 26 ruled that benefits are legal, reasoning as follows:

The crux issue is at what point is the compensation awarded or given. If we view the compensation as being awarded or given at the point where the medical benefits are actually paid out to the surviving dependents, then Section 26 is violated because no employment relationship exists at this point. Thus, payment of the benefit would be necessarily on account of services already rendered and an employment status which no longer exists. However, we believe the better view is that compensation is not awarded at the point when it is actually paid out of the State Treasury but that the crucial time for determination under Article III, § 26 is July 1, 1978, the date the award becomes effective. It is at this point where the right of the policeman to receive the benefit, which is the knowledge that his

Likewise, continuation of medical insurance in the present case for spouses and dependents of officers killed in the line of duty are from an economic viewpoint most accurately depicted as a form of deferred compensation for services actually rendered in the past, and we believe that the law does not require any deceased officer's widow and orphaned children to pay the prevailing premiums for the medical insurance.

■ The City's final contention is that the common pleas court erred in awarding Lodge 19 attorney's fees in the amount of $10,658.73. The attorney's fees were awarded pursuant to 42 Pa.C.S. § 2503(9), which provides, "The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: (9) Any participant who is awarded counsel fees because of the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." In view of the lack of appellate court precedent on the issue of whether survivor's benefits for spouses and children of municipal police officers killed in the line of duty are lawful, we are constrained to disagree with the common pleas court and hold that the City's appeal does not constitute such arbitrary, vexatious or bad faith conduct so as to justify an award of attorney's fees.

Accordingly, the common pleas court's grant of Lodge 19's motion for attorney's fees is reversed. The orders of the common pleas court are affirmed on all other grounds.

## ORDER

AND NOW, this 27th day of August, 1992, the orders of the Court of Common Pleas of Delaware County in the above-

dependents' medical expenses will be paid after his work-related death, is established. To put it another way, on July 1, 1978, a State Policeman has a vested right that requires the continuation of his medical benefits for his dependents after his work-related death. Thus the benefit is not given after the services are rendered, but in conjunction with or preceding the completion of services upon which the benefit is based, as is the case of insurance or retirement benefits which flow to the beneficiaries of deceased employees. [24 Op. Att'y Gen. 2 (1978)].
95 Pa.Commonwealth Ct. at 522–23 n. 7, 505 A.2d at 1119 n. 7.

captioned proceeding are affirmed on all grounds except the grant of Lodge 19's motion for attorney's fees. The grant of attorney's fees is reversed.