**CITY OF PHILADELPHIA, Appellant**

**v.**

**FRATERNAL ORDER OF POLICE LODGE NO. 5.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2006.

Decided Jan. 26, 2007.

Shannon D. Farmer, Philadelphia, for appellant.

Thomas W. Jennings, Philadelphia, for appellee.

Ryan J. Cassidy, Philadelphia, for amicus curiae, Pennsylvania Intergovernmental Cooperation Authority.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

In this appeal, the City of Philadelphia (City) challenges the order of the Court of Common Pleas of Philadelphia County (trial court) denying its Petition to Vacate an Act 111 Arbitration Award which increased the City's monthly contribution for eligible employees' and retirees' health care coverage. We address the following two issues: (1) whether Section 209(k) of the Pennsylvania Intergovernmental Cooperation Authority Act for Cities of the First Class (PICA)[1] carves out a separate standard and scope of review for Act 111 interest arbitration awards arising under the auspices of PICA, rather than the narrow *certiorari* scope of review generally applicable to Act 111 interest arbitration awards; and (2) if so, whether the findings of the arbitration panel (Panel) accorded substantial weight to the City's five-year financial plan (Plan) and are supported by substantial evidence, consistent with the mandates of Section 209(k).

I.

The General Assembly passed what is commonly referred to as the Policemen and Firemen Collective Bargaining Act[2] (Act 111) in 1968 to provide police and fire personnel, and their public employers, an avenue for mandatory collective bargaining for the terms and conditions of employment. If the bargaining reaches an impasse, the parties may request the appointment of a board of arbitration (arbitration panel) under Section 4 of Act 111, 43 P.S. § 217.4(a). Section 7 of Act 111 does not allow an appeal of an Act 111 arbitration decision to any court. 43 P.S. § 217.7(a). However, the *Pennsylvania Supreme Court, in Washington Arbitration Case*, 436 Pa. 168, 174, 259 A.2d 437, 441 (1969), provided for a narrow *certiorari* scope of review for Act 111 arbitration awards. A court may review an Act 111 award only for: (1) questions of jurisdiction; (2) regularity of the proceedings below; (3) questions of excess in the exercises of powers; and (4) constitutional questions. *Id.; Township of Moon v. Police Officers of the Township of Moon*, 508 Pa. 495, 500 n. 4, 498 A.2d 1305, 1307 n. 4 (1985); *see also Fraternal Order of Police, Lodge 5 v. City of Philadelphia*, 160 Pa.Cmwlth.409, 635 A.2d 222, 228 (1993). Narrow *certiorari* precludes review of questions of law. *Appeal of Upper Providence Township*, 514 Pa. 501, 513 n. 4, 526 A.2d 315, 321 n. 4 (1987).

In 1991, the General Assembly passed PICA in response to the fiscal crisis that loomed over the City.[3] Under Section 209 of PICA, the City is required to "develop, implement, and periodically revise" a five-year financial plan which must be approved by the Pennsylvania Intergovernmental Cooperation Authority (Authority). 53 P.S. § 12720.209(a), (b), (f). As it relates to Act 111 awards involving the City after the Authority approves the five-year plan, Section 209(k) provides the manner in which the arbitration panel shall arrive at its decision.[4] Specifically, any Act 111

---

1. Act of June 5, 1991, P.L. 9, 53 P.S. § 12720.209(k).

2. Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

3. *See* Section 102(a) of PICA, 53 P.S. § 12720.102(a) ("The inability of a city of the first class to provide essential services to its citizens as a result of a fiscal emergency is hereby determined to affect adversely the health, safety and welfare not only of the citizens of that municipality but also of other citizens in this Commonwealth.")

4. In pertinent part, Section 209(k) of PICA, 53 P.S. § 12720.209(k) reads:

(k) Effect of plan upon certain arbitration awards.—

interest award [5] which increases the wages or benefits of covered employees must "take into consideration and accord substantial weight to: (i) the approved financial plan; and (ii) the financial ability of the [City] to pay the cost of such increase in wages or fringe benefits without adversely affecting levels of service." 53 P.S. § 12720.209(k)(1). The panel must relay this determination, in writing, to each party to the dispute and to the Authority. The determination shall "state with specificity in writing all factors which [the arbitration panel] took into account in considering and giving substantial weight to: (i) the approved financial plan of the [City]; and (ii) the [City's] financial ability to pay the cost of such increase." 53 P.S. § 12720.209(k)(2).

(1) After the approval by the authority of a financial plan submitted pursuant to this section, any determination of a board of arbitration established pursuant to the provisions of [Act 111] providing for an increase in wages or fringe benefits of any employee of an assisted city under the plan, in addition to considering any standard or factor required to be considered by applicable law, shall take into consideration and accord substantial weight to:
(i) the approved financial plan; and
(ii) the financial ability of the assisted city to pay the cost of such increase in wages or fringe benefits without adversely affecting levels of service.
(2) Such determination shall be in writing, and a copy thereof shall be forwarded to each party to the dispute and the authority. Any determination of the board of arbitration which provides for an increase in wages or fringe benefits of any employee of an assisted city shall state with specificity in writing all factors which the board of arbitration took into account in considering and giving substantial weight to:
(i) the approved financial plan of the assisted city; and
(ii) the assisted city's financial ability to pay the cost of such increase.
(3) (i) Any party to a proceeding before a board of arbitration may appeal to the court of common pleas to review:

Along with outlining the manner of determination, Section 209(k) also permits a party under PICA to appeal an Act 111 arbitration to the trial court to review: "(A) the consideration of the [City's] financial plan; (B) the determination as to the [City's] financial ability to pay; or (C) the failure of the [arbitration panel] to issue a determination, including a detailed writing of all factors [taken into consideration] and giving substantial weight to [ (A) and (B) above.]" 53 P.S. § 12720.209(k)(3)(i). As a remedy, Section 209(k) permits the trial court to vacate and remand the matter to the arbitration panel if it finds:

(A) that the [arbitration panel] failed to take into consideration and accord substantial weight to the approved financial plan;

(A) the consideration of the assisted city's financial plan;
(B) the determination as to the assisted city's financial ability to pay; or
(C) the failure of the board of arbitration to issue a determination, including a detailed writing of all factors which the board of arbitration took into account in considering and giving substantial weight to the assisted city's financial ability to pay and the assisted city's financial plan.
(ii) The decision of the board of arbitration shall be vacated and remanded to the board of arbitration if the court finds:
(A) that the board of arbitration failed to take into consideration and accord substantial weight to the approved financial plan;
(B) that the board of arbitration's determination as to the assisted city's financial ability to pay is not supported by substantial evidence as produced by the parties to the proceedings before the board of arbitration; or
(C) that the board of arbitration has failed to state with specificity in writing the factors which it took into account in considering and giving substantial weight to the assisted city's financial ability to pay or the assisted city's approved financial plan.

5. For the distinction between an interest arbitration award and a grievance arbitration award, *see infra* note 8.

(B) that the [arbitration panel's] determination as to the [City's] financial ability to pay is not supported by substantial evidence as produced by the parties to the proceedings before the [arbitration panel]; or

(C) that the [arbitration panel] has failed to state with specificity in writing the factors which it took into account in considering and giving substantial weight to the [City's] financial ability to pay or the [City's] approved financial plan.

53 P.S. § 12720.209(k)(3)(ii).[6]

## II.

In March, 2004, the Fraternal Order of Police, Lodge No. 5(FOP),[7] and the City convened the Panel, pursuant to Section 4 of Act 111, to decide the terms and conditions of employment for the City's police officers since the parties failed to reach an agreement after the expiration of the previous collective bargaining agreement.[8] In compliance with Section 4, each party appointed an arbitrator, and the two appointed arbitrators selected an impartial arbitrator to serve as the Panel's chair. The Panel issued an award in August, 2004, but provided for a "re-opener" of the arbitration proceedings to later address the City's health care contributions for the period of July 1, 2005 through June 30, 2007.[9]

Under the re-opener provision, the Panel held hearings in June and July, 2005. In August 2005, the Panel issued the following award (2005 Award): (1) effective July 1, 2005, the City's monthly contribution increased to $1,039.00 per eligible person; (2) effective July 1, 2006, the City's monthly contribution will increase to $1,143.00 per eligible person; (3) on July 1, 2006, the City will deliver a $3,000,000.00 lump sum payment to the FOP Joint Trust Program which manages the health care coverage for eligible persons; and (4) the FOP Joint Trust Program must alter its administration of benefits to achieve a savings of at least $700,000.00 for the period from July 1, 2006 to June 30, 2007. The City Arbitrator wrote a dissent, arguing the majority failed to accord substantial weight to the Plan[10] and the City's ability

---

**6.** The General Assembly attempted to repeal Section 209(k) by passing Act No. 2002–230, Act of Dec. 30, 2002, P.L.2001, which involved, among other things, the governance of the Pennsylvania Convention Center. The Pennsylvania Supreme Court, in *City of Philadelphia v. Commonwealth*, 575 Pa. 542, 586, 838 A.2d 566, 593 (2003), held Act No. 2002–230 unconstitutional in its entirety because the legislation violated the single-subject requirement under Article Three, Section Three, of the Pennsylvania Constitution. While the Pennsylvania House of Representatives recently introduced House Bill No. 3070, which would amend Section 209(a)-(j) of PICA, the General Assembly has not attempted to subsequently repeal Section 209(k). *See* H.B. 3070, 190th Gen. Assem., Reg. Sess. (Pa. 2006).

**7.** The FOP represents 6,700 Philadelphia police officers in collective bargaining negotiations with the City.

**8.** The proceeding is categorized as an interest arbitration, where arbitration is utilized to resolve an impasse in collective bargaining over the terms of a *new or nascent* contract. *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (FOP)*, 677 A.2d 1319, 1323 n. 4 (Pa.Cmwlth.1996) (quoting *Township of Moon v. Police Officers of the Township of Moon*, 508 Pa. 495, 501 n. 5, 498 A.2d 1305, 1308 n. 5 (1985)). Interest arbitrations are distinguished from grievance arbitrations which involve disputes between the employer and the union over the interpretation of an *existing* agreement. *Id.*

**9.** Under contract, the City pays the FOP Joint Trust Program (Trust) a monthly health care contribution, as determined by an Act 111 interest arbitration panel, for eligible employees and retirees. The Trust then uses those contributions to pay health care providers and provide coverage for those that are eligible.

**10.** Under Section 209(a) and (b)(1) of PICA, the City is required to develop a five-year financial plan detailing the fiscal health of the City. 53 P.S. § 12720.209(a), (b)(1). The plan

to pay as dictated by Section 209(k) of PICA.[11] Furthermore, the City Arbitrator noted that the majority also failed, under PICA, to detail specifically all the factors considered in order to give the requisite substantial weight to the Plan and the City's financial ability to pay.

Thereafter, the City filed a Petition to Vacate the 2005 Award with the trial court, which it ultimately granted in October 2005. Judge Dych found the 2005 Award failed to specify, in writing, the factors considered in rendering the award. The trial court remanded the case to the Panel and directed it to comply with the requirements of PICA.

On remand, the Panel issued a 32–page award in January 2006 (2006 Award), which contained identical economic results as its previous 2005 Award. In construing PICA, the majority interpreted the term "substantial weight" as applying considerable weight, which is not controlling weight, to the Plan and the City's ability to pay any increases in benefits. (2006 Award at 7.) In its decision, the majority detailed 55 factors it considered when reaching the 2006 Award, including the City's declining General Fund, the City's tax policy, the Plan (see 2006 Award at 10–16, ¶¶ 8–22), the percentage increase of the City's contributions under the 2006 Award (15.7% in the first year and 10% in the second year), the importance of health care to the FOP, and the income of City police officers, which is comparatively less than their counterparts elsewhere in the region. The

majority conceded that this 2006 Award would exceed the assumptions of the Plan by $15.8 million. (2006 Award at 16.) However, the Panel characterized the increase as de minimis compared to the City's overall budget, amounting to only 4/100 of 1%, providing "enough elasticity in the budget to absorb" the increase. (2006 Award at 17.) The City Arbitrator wrote a vigorous dissent, reiterating his original objections to the 2006 Award in much more colorful language.[12] In response, the FOP Arbitrator wrote a concurrence to counterbalance the dissent's concerns.

In February 2006, the City filed a Petition to Vacate the 2006 Award with the trial court, claiming the Panel violated PICA by: (1) failing to accord substantial weight to the Plan; (2) failing to accord substantial weight to the City's ability to pay the increased award without adversely affecting City services; and (3) finding the City had the ability to pay the increased award without the support of substantial evidence. In a two-page footnoted order, the trial court denied the City's Petition in April 2006. Relying on Pennsylvania State Police v. Pennsylvania State Troopers Ass'n, 840 A.2d 1059, 1062 (Pa.Cmwlth. 2004), the trial court applied the "extreme standard of deference to Act [111 arbitration] awards." (Trial Ct. Order, April 17, 2006.) The trial judge also held that he "cannot substitute [his] judgment for that of the arbitrators, even if [he finds] their factual findings to be incorrect." (Trial Ct. Order, April 17, 2006 (citing Pennsylvania State Police).) This appeal followed.[13]

must, subsequently, be approved by the Pennsylvania Intergovernmental Cooperation Authority (Authority). 53 P.S. § 12720.209(f). Here, the Authority approved the Plan on July 31, 2005.

11. Section 209(k) of PICA only applies to interest arbitration proceedings. FOP, 677 A.2d at 1323 n. 4.

12. Throughout his dissent, the City Arbitrator characterized the majority's action as "irre-

sponsible," "result-oriented," "egregious," "nonsensical," "outrageous," "throwing a bone to the City," and "thumb[ing] its nose at the City's inability to pay the increased cost of this Award." (2006 Award, Dissenting Opinion.)

13. Because the City questions whether the trial court applied the proper standard and scope of review, the City raises a question of law, which this Court reviews de novo under

## III.

Before this Court, the City argues the narrow *certiorari* scope of review is inapplicable in appeals stemming from PICA. In light of the General Assembly's intent to protect the City's fiscal health, the City asserts the direction enunciated under PICA (enacted in 1991) must prevail. Moreover, the City claims the statutory language is clear; Section 209(k) directs a court to vacate and remand *if the court finds* the award failed to satisfy one of the three requirements. PICA obligates the court to review the evidence in the record to determine whether the Panel accorded substantial weight to the Plan, the City's financial ability to pay, and whether the determination that the City has the ability to pay is supported by substantial evidence. According to the City, the specificity of Section 209(k) trumps the general rule for appealing Act 111 awards. While *City of Philadelphia* may seemingly recognize the application of the narrow *certiorari* scope of review in this case, the City asks us to distinguish it because the Court merely assumed narrow *certiorari* applied without any discussion of PICA requirements. Alternatively, if this Court decides not to distinguish *City of Philadelphia*, the City contends that this Court has compelling reasons to reject it in light of the clear statutory mandate of PICA.[14]

In response, the FOP argues the narrow *certiorari* scope of review continues to be applicable as the bedrock for Act 111 awards, and PICA fails to alter the scope. Citing *City of Philadelphia*, the FOP asserts that this Court previously recognized the application of narrow *certiorari* for Act 111 awards involving PICA. The FOP maintains a court may not review Act 111 awards for legal or factual error. If this Court adopted the City's argument, the FOP asserts that decision would result in " 'protracted litigation' of monumental proportion." (FOP's Br. at 34.) According to the FOP, the City is merely disappointed with the 2006 Award and offers no rational argument to justify disregarding decades of consistent law.

In *City of Philadelphia*, the Court addressed an appeal of an Act 111 arbitration award involving the same parties here. There, the FOP appealed the award and raised nine issues before this Court. As to its fifth issue, the FOP claimed the arbitration panel failed to address, with specificity, the factors they considered as mandated by PICA. *City of Philadelphia*, 635 A.2d at 228. Outlining the narrow *certiorari* scope of review, the Court summarily dismissed the fifth issue because the FOP sought "our determination of legal issues which were determined by the arbitrators." *Id.* The Court neither discussed the implications of PICA on the traditional Act 111 scope of review, nor outlined the specific requirements contained within PICA.[15] Because the Court did not discuss

---

a plenary scope of review. *Township of Sugarloaf v. Bowling*, 563 Pa. 237, 241 n. 3, 759 A.2d 913, 915 n. 3 (2000); *Stoner v. Stoner*, 572 Pa. 665, 667 n. 1, 819 A.2d 529, 530 n. 1 (2003).

14. The Authority submitted an amicus curiae brief urging this Court to reverse the trial court. Following the reasoning of the City's brief, the Authority argues the trial court erred in applying the narrow *certiorari* scope of review, and the express terms of PICA govern the review of interest arbitration awards involving the City. Under the proper scope of review, the Authority asserts the

2006 Award is not supported by substantial evidence and lacks any evidence to support the City's ability to pay for the 2006 Award.

15. The trial court cited *Pennsylvania State Police* for support of its denial of the FOP's petition. The facts there dealt with a traditional Act 111 grievance award and did not involve the application of PICA because the City was not a party. *Pennsylvania State Police*, 840 A.2d at 1061. Because it is inapposite to the legal issues raised, *Pennsylvania State Police* fails to add any persuasive or precedential weight to the legal issues here.

any effect PICA would have had on the Act 111 award, the holding in *City of Philadelphia* is of limited value to the present case. *See Commonwealth v. Arroyo*, 555 Pa. 125, 138, 723 A.2d 162, 168 (1999) (distinguishing a prior case because it failed to discuss the issue at hand, rendering it "uninstructive").

■ The unequivocal language in the PICA statute clearly requires a reviewing court to engage in a limited factual review of an Act 111 arbitration award occurring after the Authority approved the Plan. Under Section 209(k)(3), a party may appeal to the trial court to review the Panel's consideration of the City's Plan, its determination of the City's ability to pay, and any failure to properly outline the factors, in writing, giving substantial weight to the City's interests. Furthermore, the trial court may vacate and remand *if the court finds* a defect as enunciated by the statute. The statutory language necessarily mandates a review of the factual record, and narrow *certiorari* does not apply here.[16]

We agree with the City that the statutory language of PICA should be given effect, particularly where the General Assembly clearly enunciated a mode of judicial review for the parties to pursue, further bolstered by the General Assembly's policy considerations in providing a safeguard to the City's financial management. *See* Section 102(b)(1)(iii) of PICA, 53 P.S. § 12720.102(b)(1)(iii) (declaring the General Assembly's intent to "foster sound financial planning" for the City).

## IV.

Because the trial court applied a narrow *certiorari* scope of review, it did not reach the merits of the award. We, therefore, vacate and remand for the trial court to address whether the Panel accorded substantial weight to the Plan and whether the Panel's determination as to the City's ability to pay for the increased 2006 Award is supported by substantial evidence in the record brought before the Panel.[17]

■ The courts apply the substantial evidence standard of review on a regular basis, and therefore, we need not discuss that standard. However, PICA does not define "substantial weight" or what it means to accord substantial weight to the Plan. The term "substantial weight" is used in the administrative law context where courts accord a measure of deference to an agency's interpretation of its governing statute. In doing so, the courts implicitly recognize the expertise of the agency in carrying out its mission as charged by the General Assembly because the agency is generally in a better position to interpret its governing statute. *Philadelphia Suburban Corp. v. Board of Finance and Revenue*, 535 Pa. 298, 302, 635 A.2d 116, 118 (1993) (recognizing the agency's expertise and giving its interpretation "great weight"). The courts, thus, accord substantial weight to that interpretation unless the interpretation runs contrary to the plain language of the relevant statute or regulation. *Carbondale Nursing*

---

16. At oral argument, the Authority cited to *Local 22, Philadelphia Fire Fighters' Union v. Commonwealth*, 531 Pa. 334, 344, 613 A.2d 522, 527 (1992), which addressed the constitutionality of Section 209(k) of PICA. Declaring the statute constitutional, the Pennsylvania Supreme Court aptly recognized that, "[u]ndoubtedly, the unions are correct in stating that arbitration awards under [Section 209(k) of PICA] will be treated differently than under the terms of Act 111...." *Id.*

17. While this Court may apply the standard under PICA to the record before us, our decision to remand is in recognition of the textual commitment PICA provides for the trial court, in the first instance, to review the 2006 Award for substantial weight and substantial evidence. 53 P.S. § 12720.209(k)(3)(i) ("Any party ... may appeal to the *court of common pleas* to review ....") (emphasis added).

*Home, Inc. v. Department of Public Welfare*, 120 Pa.Cmwlth. 186, 548 A.2d 376, 378 (1988); *Chappell v. Pennsylvania Public Utility Commission*, 57 Pa.Cmwlth. 17, 425 A.2d 873, 875–76 (1981).[18]

■ Here, we believe that the legislature's use of the term "substantial weight" in PICA is intended to require the Panel to accord the same deference to the Plan as the courts give to agency interpretations. The Plan, created by the City with the ultimate approval by PICA, represents the fiscal and management expertise of both the City and PICA in dealing with the internal affairs and operations of the City.

We, therefore, vacate the order of the trial court and remand for consideration on the merits so that the trial court can apply the proper standard of review articulated under PICA in accordance with this opinion.

### ORDER

NOW, January 26, 2007, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby **VACATED,** and this matter is **REMANDED** for consideration on the merits, applying the standard of review under Section 209(k) of PICA, 53 P.S. § 12720.209(k).

Jurisdiction relinquished.

**18.** While the term "substantial weight" has been used interchangeably with other similar characterizations, the concept of deference to agency expertise still remains and is firmly rooted in our precedent. *Borough of Pottstown v. Pennsylvania Municipal Retirement Board*, 551 Pa. 605, 611, 712 A.2d 741, 744 (1998) (conferring "substantial deference" to an agency's interpretation); *Harston Hall Nursing and Convalescent Home, Inc. v. Department of Public Welfare*, 99 Pa.Cmwlth. 475, 513 A.2d 1097, 1100 (1986) (according

DISSENTING OPINION BY Judge McGINLEY.

I agree with the majority that the narrow *certiorari* scope of review is inapplicable in appeals stemming from PICA. I respectfully dissent, however, from the majority's decision to remand this case back to the trial court.

The Panel fully complied with the trial court's remand order and considered the requirements of PICA. The result was a 32–page award which detailed the 55 factors it considered when reaching the 2006 Award. In its petition to vacate, the City alleged that (1) the Panel failed to accord substantial weight to the Plan and the City's ability to pay the increased award, and (2) that the Panel's findings were not supported by substantial evidence.

The majority remands to the trial court because the trial court applied the wrong standard of review. I believe a remand is unnecessary because the City's claims involve questions of law that are able to be resolved on the existing record regardless of the standard of review applied by the trial court.

Questions of evidentiary sufficiency present questions of law; thus, our standard of review is *de novo* and our scope of review is plenary. Although the trial court did not review the factual record, in the interest of judicial economy, this Court should not remand but should proceed with appellate review. *See Common-*

an agency determination in carrying out its statute "controlling weight"); *SmithKline Beckman Corp. v. Commonwealth*, 85 Pa. Cmwlth. 437, 482 A.2d 1344, 1353 (1984) (giving an agency interpretation "great judicial deference"); *Carbondale Nursing Home, Inc.*, 548 A.2d at 378 (noting that "an agency's interpretation of its regulations is entitled to substantial weight ..."); *Chappell*, 425 A.2d at 875 (holding that an agency's construction of a statute is entitled to "great weight").

*wealth v. Gilmour Manufacturing Co.,* 573 Pa. 143, 822 A.2d 676 (2003). *Warehime v. Warehime,* 580 Pa. 201, 860 A.2d 41 (2004); *Banacol Marketing Corp., v. Penn Warehousing,* 904 A.2d 1043 (Pa.Cmwlth.2006); *Masloff v. Bascovsky,* 141 Pa.Cmwlth. 125, 595 A.2d 224 (1991).

Because meaningful appellate review is not hindered here, I would not remand.