**City of Philadelphia v. Int'l Ass'n of Firefighters, Local 22**

*Shannon D. Farmer* and *Meredith C. Swartz*, for petitioner.

*Nancy B. G. Lassen, Richard G. Poulson, Ralph J. Teti* and *John R. Bielski,* for respondent.

FOX, *J.,* March 1, 2013—FACTUAL and PROCEDURAL HISTORY

The City of Philadelphia (city) has appealed this dcourt's November 19, 2012 order wich denied its petition to vacate an Act 111 arbitration award. Act 111, also known as the Police and Firemen Collective Bargaining Act, was enacted to avoid the consequences of strikes by uniformed safety employees by offering interest arbitration as a method of resolving disputes. Act 111 interest arbitration is a process whereby the issues not resolved in bargaining between the employer and the union may be presented to a panel of arbitrators for final resolution. This differs from grievance arbitration, wherein the arbitrator interprets a term in an existing agreement. The issues in dispute here are between the city and the International Association of Fire Fighters, Local 22 (union). The union represents a bargaining unit of certain uniformed employees of the city within the Philadelphia Fire Department.

In 2008, the city and the union commenced bargaining and exchanged proposals regarding requested changes in the then-existing collective bargaining agreement, which was set to expire on June 30, 2009. In 2009, when their

previous bargaining collective agreement expired, the parties proceeded to interest arbitration before a panel of arbitrators, (panel) pursuant to Act 111, as modified by the Pennsylvania Intergovernmental Cooperation Authorities Act (PICA Act).

The PICA Act was passed by the Pennsylvania Legislature in 1991, creating what is essentially a financial watchdog to oversee the city's finances. PICA requires the city to submit, at least annually, a detailed five year financial plan ("Five Year Plan") of its anticipated revenues and expenditures, with a balanced budget each year, for approval by the PICA board. The PICA board evaluates the Five Year Plan to ensure that the budget is reasonable and approves it or disapproves it accordingly. The PICA Act also imposes certain requirements on Act 111 interest arbitration panels to circumscribe their power. As discussed in more detail below, the panel must accord substantial weight to the city's PICA-approved Five Year Plan.

Here, the panel conducted numerous hearings with each side presenting numerous witnesses and exhibits. Following the hearings, the panel met in executive sessions and on October 15, 2010, issued a four-year award (2010 award) covering the period from July 1, 2009 through June 30, 2013. The 2010 award contained a thorough and complete review of the financial factors considered by the panel in the course of its deliberations. The 2010 award contained seventeen (17) substantive provisions that provided a mix of economic and non-

economic improvements and concessions.

On November 12, 2010, the city filed a petition to vacate the 2010 award alleging that certain provisions violated Act 111, and asserting that the panel failed to satisfy the PICA Act requirements. On November 16, 2011, by mutual agreement of the parties, after a lengthy period of appeal without finality, the court issued an order which remanded the matter back to the panel with instructions to issue a final award in accordance with the PICA Act requirements. The order was entered without prejudice to the city's claim that provisions of the 2010 award should be vacated because they violate Act 111.

Thereafter, the panel conducted additional hearings, and received additional testimony and documentary evidence concerning the city's financial status, the local, state and national economies, the city's most recent 5-year financial plans, the financial resources available to the city and the impact of the parties' proposed contractual adjustments on the city's fiscal condition. Following the remand hearings, the panel met in executive sessions and issued a new award on July 2, 2012 (2012 award). The city filed a petition to vacate the 2012 award[1], alleging that it violates PICA, while the union filed a cross-petition to confirm and enforce the 2012 award. The court received memorandum from all parties and heard oral argument and on November 19, 2012 denied the petition to vacate and affirmed the award. This appeal followed.

---

1. The proceedings in this case have now extended forty (40) months into the panel's original forty-eight (48) month award term.

## DISCUSSION

The city contends that the arbitration panel's award should be vacated because the panel did not give substantial weight to the city's approved PICA plan and to the city's ability to pay, in violation of the PICA Act. The union, in contrast, argues that the panel did accord such weight to the plan and the city's ability to pay. Addressing this ultimate issue first requires that the court analyze the interplay of three distinct legal concepts: the scope of this court's review, and standard of review this court must apply, and the deference the arbitration panel was required to show to the PICA plan.[2] Therefore, before reaching the merits of the parties' arguments and an analysis of the factual record, the court feels it is necessarily to clarify and distinguish between these three concepts.

"'Scope of review' refers to the confines within which the court must conduct its examination." *Town of McCandless v. McCandless Police Officers Ass'n*, 901 A.2d 991 (Pa. 2006). The scope of review is therefore a boundary set for the court, limiting the kinds questions that the court may decide. By determining the proper scope of review, the court is essentially determining "the matter..... the court is permitted to examine." *Id.* Here, the scope of review will control which aspects of the challenged award it can even examine.

As the scope of review controls *what* issues are before a court, the standard of review controls how a court may

---

2. A fuller explanation of the PICA plan follows below.

look at the issues before it. In this context, the standard of review will determine how much this court is permitted to second-guess the arbitration panel as the court reviews those aspects of the panel's award properly before it. Essentially, the standard of review is a measure of how much deference this court must show to the arbitration panel's findings of fact.

While the standard of review controls the deference this court must show to an arbitration panel's findings of fact and assessment of the evidence presented to it, the third concept implicated here is the degree of deference an arbitration panel must show to the factual assumptions contained in the city's approved PICA plan. Just as the standard of review determines how much this court is permitted to second-guess the arbitration panel, the deference implicated here determines how much the arbitration panel is permitted to second-guess the plan. As will become clear in the analysis below, both the city and the union agree that Act 111 Interest arbitration panels are required to give some level of deference to the assumptions and judgments encapsulated in the city's most recently approved PICA plan. To determine if a panel made a mistake therefore, it is first necessary to articulate exactly what is that level of deference. In other words, the question of deference is at its core a question of whether, and under what circumstances, an Act 111 arbitration panel may make a finding of fact that contradicts an assumption or judgment contained in the PICA approved plan.

Formulated in terms of the concepts outlined above, the

*legal* questions before this court are as follows: can this court review the arbitrators' deference (or lack thereof) to the city's PICA plan and ability to pay, how much deference must this court show to the arbitration panel if it can, and how much deference must an Act 111 arbitration panel show to an approved PICA plan to begin with. Only once these questions have been answered can this court answer the core question raised by the city's petition.

## SCOPE OF REVIEW

The ordinary scope of this court's review of an Act 111 interest arbitration proceeding is one of "narrow certiorari." Generally, "an appeal will lie to the courts in the nature of a narrow certiorari, and this court will review only (1) the question of jurisdiction; (2) the regularity of the proceedings before the agency; (3) questions of excess in exercise of powers; and (4) constitutional questions." *In re Wash. Arbitration Case*, 259 A.2d 437, 441 (Pa. 1969). This scope of review is highly restrictive; under narrow certiorari, "the merits of the controversy cannot be considered even though the interpretation given to the facts or the law by the [arbitration panel] may have been erroneous." *Highway Paving Co. v. State Board of Arbitration of Claims*, 180 A.2d 896, 897 (Pa. 1962).

However, there is a narrow exception for review under the Pennsylvania Intergovernmental Cooperation Authority (PICA) Act. The PICA act provides that "Any party to a proceeding before a board of arbitration may appeal to the court of common pleas to review:

(A) the consideration of the assisted city's financial plan;

(B) the determination as to the assisted city's financial ability to pay; or

(C) the failure of the board of arbitration to issue a determination, including a detailed writing of all factors which the board of arbitration took into account in considering and giving substantial weight to the assisted city's financial ability to pay and the assisted city's financial plan."

53 P.S. § 12720.209(k)(3).

The PICA act therefore permits a party to an Act 111 interest arbitration proceeding to secure review of a resultant award even where the issues raised do not fall under one of the four traditional categories of jurisdiction, regularity, scope of powers and constitutional questions. This was, in fact, the holding of the Commonwealth Court in *City of Philadelphia v. FOP Lodge No. 5*, 916 A.2d 1210 (Pa. Commw. Ct. 2007). In that case, a common pleas court considered a PICA Act appeal from an Act 111 award using the ordinary "narrow certiorari" scope of review. Finding the restrictive scope of review to be dispositive, and without engaging in a review of the arbitration panel's factual findings, the common pleas court denied the city's petition to cacate. The Commonwealth Court disagreed, and after examining the language of the PICA Act announced that "The statutory language necessarily mandates a review of the factual record, and narrow certiorari does

not apply here." *City of Philadelphia v. FOP Lodge No.5*, 916 A.2d 1210, 1216 (Pa. Commw. Ct. 2007). The court then remanded the case to the common pleas court with instructions to reach the question of whether or not the arbitrator's award in *FOP Lodge No. 5* complied with the PICA Act.

Therefore, following *FOP Lodge No. 5*, the court's scope of review is not limited to "narrow certiorari." It is under the same provisions of the PICA Act that the city now brings its appeal, and the scope of this court's review therefore encompasses the question of whether or not the arbitration panel accorded substantial weight to both the city's financial plan and to the city's ability to pay the award without adversely affecting levels of service.[3]

## STANDARD OF REVIEW

The *FOP Lodge No. 5* case also touches on the second legal question before the court — that of the court's proper standard of review. In that case, the Commonwealth Court described the task of a common pleas court reviewing an Act 111 award under the PICA Act as one of "limited factual review." *Id.* In its holding, the court remanded the case for the trial court to decide "whether the Panel accorded substantial weight to the plan and whether the Panel's determination as to the City's ability to pay for the [ ] Award is supported by substantial evidence in the record brought before the Panel." *Id.* The "substantial

---

3. The city does not contend that the panel failed to issue a sufficiently written determination under (C).

evidence" language is a reference to the standard of review common pleas courts commonly employ when reviewing the decisions of an administrative agency as codified in 2 Pa.C.S. § 704 (requiring courts reviewing the factual findings of administrative decisions to reverse the decision if "any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence"). Since the *FOP Lodge No.5* court described the factual review as "limited," and instructed the common pleas court to review the factual record for "substantial evidence," it is clear that this court may examine the arbitration panel's findings of fact only under a standard of review similar to the one the court uses to evaluate administrative agency decisions.

The "substantial evidence" standard of review is highly deferential to the factual findings of the agency below (or, in this case, the findings of the arbitration panel). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jeanes Hosp. v. Workers' Comp. Appeal Bd. (Hass)*, 872 A.2d 159, 166 (Pa. 2005). As long as some such relevant evidence exists to support the agency or panel's factual conclusion, the court must accept that conclusion, even if the court would have reached a different one if it were to consider the question afresh. *Coleman v. Fischer*, 63 A.2d 687, 690 (Pa. Super. Ct. 1949). Because the job of evaluating evidence is one for the arbitration panel and not for this court on appeal, under the "substantial evidence" standard, this court will give the panel "the benefit of every

inference which can be logically and reasonably drawn" from the evidence (*In re Smith Unemployment Comp. Case*, 74 A.2d 523, 524 (Pa. Super. Ct. 1950)) and will view all evidence in the light most favorable to the panel's Act 111 award. The second legal question posed above — that of how much deference this court must show to the arbitration panel's findings of fact — is now answered; this court must employ a highly deferential standard of review, and reject a finding of fact by the arbitration panel *only* if the panel had no relevant and reasonable evidence on which to base that finding.

## SUBSTANTIAL WEIGHT

The court now turns to the question of how much deference the arbitration panel was required to show to the factual assumptions, projections and conclusions contained in the city's approved PICA plan. The PICA Act requires that an arbitration panel must "take into consideration and accord substantial weight to:

(i) the approved financial plan; and

(ii) the financial ability of the assisted city to pay the cost of [any] increase in wages or fringe benefits without adversely affecting levels of service."

53 P.S. § 12720.209(k)(1).

The requirement that arbitration panels "accord substantial weight" makes it clear that the PICA Act requires at least *some* level of deference to the City's approved PICA plan. The precise extent of that deference

however, is not made clear in the statute itself. The court therefore turns to case law to guide the necessary interpretation.

The phrase "substantial weight" has long been used in opinions discussing child custody cases. In *Mahoney v. Mahoney*, for example, the Superior Court used "substantial weight" to describe the impact a child's stated preference should have on a trial court's custody decision. 512 A.2d 694, 697 (Pa. Super. Ct. 1986). The *Mahoney* court noted elsewhere in its discussion that a child's preference should be an "important factor which must be carefully considered" in the trial court's decision. *Id.* Although the preferences of a child are important and must bear on a trial court's decision, the Superior Court noted that "the express wishes of the child are not controlling in custody decisions." *Id.* Similarly, in *In re Russo*, the Superior Court described the "tender years" doctrine and the goal of keeping siblings united as meriting "substantial weight" in deciding custody, but nevertheless upheld the trial court's decision to separate a young child from his mother and sibling.[4] 346 A.2d 355, 357 (Pa. Super. Ct. 1975). While the meaning scribed to "substantial weight" in these cases is not controlling because the cases arise in the family law context and not the context of a PICA Act appeal, they are illustrative of the level of deference "substantial weight" entails.

4. The "tender years" doctrine is the precept that "a child of tender years should be with the mother." *In re Russo*, 346 A.2d 355, 357 (Pa. Super. Ct. 1975)

The meaning of "substantial weight" in a PICA context was specifically addressed by the Commonwealth Court in *FOP Lodge No. 5*. After deciding and disposing of that case on the issue of the proper scope of review, the court offered its conjecture as to the meaning of "substantial weight" deference. The Commonwealth Court analogized such deference to the deference courts give to administrative agency interpretations of those agencies' governing statutes. It is long established that courts will to some extent defer to the meaning an administrative agency attaches to statutory language where the agency has been charged with administering that statute. See, e.g. *Borough of Pottstown v. Pennsylvania Municipal Retirement Board*, 712 A.2d 741, 744 (Pa. 1998). This is because administrative agencies are presumed to have a special competence within the field of their operation, while courts lack that special competence. *Phila. Suburban Corp. v. Bd. of Fin. & Revenue*, 635 A.2d 116, 118 (Pa. 1993). As a logical extension of this rationale, the greater the technical complexity of the statutory scheme and the more arcane the expertise required to understand the subject of the agency's purview, the greater the deference courts will show to the agency's interpretations. *Sunoco, Inc. (R&M) v. Dep't of Envtl. Prot.*, 865 A.2d 960, 970 (Pa. Commw. Ct. 2005). Under this level of deference, courts should adopt an agency's interpretation of a regulatory statute "unless it is clearly erroneous or is inconsistent with the intent or purpose of the statute." *Martin Media v.*

*DOT,* 700 A.2d 563, 566 (Pa. Commw. Ct. 1997).[5] Thus, an agency interpretation may even, in a sense, be described as having "controlling weight." *Harston Hall Nursing & Convalescent Home, Inc. v. Commonwealth, Dep't of Pub. Welfare,* 513 A.2d 1097, 1100 (Pa. Commw. Ct. 1986).

This analogy, while helpful, only goes so far. Unlike the deference courts show to agencies on questions of statutory interpretation, "substantial weight" deference under PICA involves questions of fact, not of law. A fact cannot be "inconsistent with the intent or purpose of [a] statute," nor is a fact a complex and technical scheme which requires special administrative expertise to administer. It simply is, or is not. Unlike the administration of regulatory schemes, determining the existence or nonexistence of a fact is one of the core areas of judicial (and arbitral) competence. This special judicial competence is the reason why "[t]he general rule in this Commonwealth is that a weight of the evidence claim is primarily addressed to the discretion of the judge who actually presided at trial." *Armbruster v. Horowitz,* 813 A.2d 698, 702 (Pa. 2002). Additionally, unlike the agencies charged with the administration (and related adjudication) of a complex and technical regulatory scheme, the PICA board here functioned only as an approval body. It was

---

5. The city sets great store by the Commonwealth Court's analogy, and maintains that it requires the arbitration panel to accept the PICA plan's assumptions as true absent "fraud, bad faith, abuse of discretion or clearly arbitrary action." Besides the fact that the relevant section of *FOP Lodge No. 5* is nonbinding *dicta,* and therefore relevant only for its potential persuasive value, this court is unable to determine how the city arrived at this standard from a reading of the Commonwealth Court's opinion.

actually the city of Philadelphia and not the PICA board who developed the PICA plan and made the assumptions contained therein. The plan therefore only indirectly reflects whatever particular expertise the PICA board may have with respect to municipal finances, and the rejection of one of the plan's assumptions is therefore not a rejection of an agency's expertise. Since the analogy is necessarily inexact, this court reads the Commonwealth Court's *dicta* in *FOP Lodge No. 5* loosely for the proposition that the city's PICA plan should be an extremely important piece of evidence for the arbitration panel to consider, and that the arbitration panel should have a good reason for finding contrary evidence more persuasive.

Reading the custody cases cited above together with the Commonwealth Court's *dicta* in *FOP Lodge No. 5,* the court can draw certain conclusions about the deference the arbitration panel is required to show to the city's approved PICA plan. Clearly, the assumptions encapsulated in the PICA plan should be an "important factor" in the arbitration panel's decision, and clearly they must be "carefully considered" when the panel formulates an award. While the PICA plan's assumptions do not wholly control the Panel's factfinding ability, the panel may not disregard the plan without strong contrary evidence. This view is most consistent with the language of the statute, the persuasive case law, the general rule that factfinders themselves are the best judges of the evidence before them, and the recognition of the arbitration panel's own substantial expertise in evaluating financial evidence.

Now that the three legal questions raised above have been answered, the court may now frame the case properly. The scope of review permits court to review the arbitration panel's "consideration of the assisted city's financial plan...and [ ] determination as to the assisted city's financial ability to pay." 53 P.S. § 12720.209(k)(3). The "substantial evidence" standard of review requires this court to address those issues while viewing all of the evidence in the light more favorable to the Panel, and to reject a finding of fact by the arbitration panel *only* if the panel had no relevant and reasonable evidence on which to base that finding. Finally, when evaluating the question of whether or not the panel properly gave "substantial weight" deference to the city's approved PICA plan, the court will look to ensure that, where the Panel did not adopt an assumption contained in the Plan, it nevertheless gave the plan "careful consideration" and had sound reasons for making a contrary finding of fact. Having established the relevant legal background, the court now turns to the merits of the award itself.

## AWARD

Given this court's scope of review, it is clear that panel gave "substantial weight" to the city's approved financial plan, along with the city's ability to afford the costs of the award without cuts in service, and set forth its "careful considerations" regarding the same in writing. These considerations are supported by substantial evidence in the record. The record before the panel included more then 23,000 pages of testimony and documentary

evidence presented by both parties concerning the city's ability to pay and the city financial plan. The panel clearly evaluated the whole record, weighed the credibility of both parties' evidence, and set forth 168 specific written considerations drawn from record evidence. Upon review of the record it is clear that both the city and the union presented substantial evidence in support of their position. Just because the panel arrived at conclusions that are different from the city's does not necessarily mean that the award is unsupported by substantial evidence, or is not in compliance with the PICA Act. Section 209(k)(3)(iv) of the PICA Act provides:

> If, after the exhaustion of all appeals, the final arbitration award is not in compliance with the approved financial plan, the award shall not be void or voidable solely by reason of such noncompliance, but the assisted city shall submit the authority of a proposed revision to the plan which demonstrates that revenues sufficient to pay the costs of the award will be available in the affected fiscal years of the plan.

53 P.S. §12720.209(k)(3)(iv)

First, upon review of the record it is clear that there is substantial evidence to support the panel's findings as to the economy in Philadelphia and any changes to the same since the first award was issued in 2010. Such evidence, including the Dow Jones Industrial Average, GDP, unemployment numbers and various measures of consumer confidence all reflected economic improvement

since the low point of the recession in 2009. The record also includes the city's population growth.

The panel also made findings based upon evidence presented that included demonstrated limitations in the city's structural forecasting model and it's Five Year Plan. The panel concluded that the city consistently forecast below actual city tax revenue. The panel also concluded that the city will realize substantially greater revenue in upcoming years than the city projected. In reviewing the city's plan, the panel concluded that it contained plans to implement significant voluntary tax reductions during the life of its current plan, as well as substantial discretionary expenditures. Next, there is evidence of the significant amount of savings that the city had already secured from the Local 22 bargaining unit by failing to maintain wage parity among its police and firefighters. Essentially, each of the city's last five approved financial plans assumed that the firefighters will receive no wage or benefit increases.

Next, and perhaps most importantly, the city did not appeal the 2009 police award, which was substantially more costly to city, despite the city having reported a negative fund balance of $137 million at the time. Further, the cost of that award had not been included in the applicable plan submitted and approved by the PICA board.

The Act does not require the panel to reach the same conclusion as the PICA board approved plan. Such a requirement would render the Act 111 arbitration process of no purpose. The city contends that the panel failed to

give the PICA approved plan the deference required. Yet it based this argument solely on the award being more than the city budgeted. This court disagrees. The panel clearly complied with both Act 111 and the PICA Act. For the reason set forth above this court's decision to affirm the arbitration award and deny the city's petition to vacate should be affirmed.